**RICHARDSON–EAGLE, INC., Appellant,**

v.

**WILLIAM M. MERCER, INC., and William M. Mercer of Texas, Inc., Appellees.**

No. 01–04–01000–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 7, 2006.

Rehearing Overruled Feb. 28, 2007.

James L. Reed, Jr., Travis Scott Crabtree, Looper, Reed & McGraw, Houston, TX, for Appellant.

Bart Wulff, Jackson Walker L.L.P., W. Michael Byrd Jr., Dallas, TX, Carole Elaine Howard, Jackson Walker LLP, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices TAFT and ALCALA.

## OPINION

SHERRY RADACK, Chief Justice.

Richardson–Eagle, Inc., appellant, has filed a motion for en banc reconsideration of our opinion issued on August 24, 2006. We withdraw our opinion and judgment of August 24, 2006 and substitute this opinion in their stead. Because we issue a new opinion in connection with the denial of rehearing, appellant's motion for en banc reconsideration of our prior opinion is moot. *See Brookshire Bros. v. Smith*, 176 S.W.3d 30, 40 n. 2 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (supp op. on reh'g).

Richardson–Eagle sued appellee, William M. Mercer, Inc., for tortious interference with an existing contract, tortious interference with a prospective business relation, violation of former article 21.21 of the Insurance Code,[1] and violation of the Business and Commerce Code.[2] The trial court rendered summary judgment in favor of Mercer on all of Richardson–Eagle's claims, denied Mercer's claim of governmental immunity, and denied Richardson–Eagle's motion for partial summary judgment on certain statutory violations by Mercer. Richardson–Eagle appeals, claiming that fact issues remain on all of its claims against Mercer and claiming that it conclusively established the statuto-

ry violations by Mercer as a matter of law. We affirm.

## Facts

In June 2000, William M. Mercer, Inc. (Mercer) and Houston Independent School District (HISD) entered into a Health and Welfare Benefits Consulting and Administration Agreement (the agreement) whereby Mercer agreed to provide consulting and administrative services in connection with certain benefit plans offered by HISD to its employees. HISD contracted with Mercer in order to improve services and lower costs through a more centralized administration of the benefits program, which had previously been administered piecemeal by HISD staff and individual insurance vendors and agents. Richardson–Eagle was an insurance agency that had been selling voluntary benefits insurance products to HISD since 1996.

In August 2000, Mercer released HISD's Request for Proposal (RFP) to solicit bids for voluntary benefits-insurance proposals for hospital-indemnity, cancer, and disability programs. The RFP stated that "all quoted rates should be net of commissions," that "all proposers must be prepared to enroll participants electronically," and that HISD reserved the right, "at its sole discretion," to reject any and all proposals without penalty. Richardson–Eagle responded to the RFP on behalf of the Standard and American Heritage insurance companies. Richardson–Eagle submitted a disability-insurance proposal on behalf of Standard and cancer and hospital-indemnity proposals on behalf of American Heritage. All proposals included 15–percent commissions to be paid to

---

1. *See* Act of May 10, 2001, 77th Leg., R.S., ch. 290, § 1, 2001 Tex. Gen. Laws 548, 548–50 (repealed and recodified 2003) (current versions at Tex. Ins.Code Ann. §§ 541.051,

541.056 (Vernon Supp.2005)) (hereinafter former article 21.21 § 4).

2. Tex. Bus. & Com.Code Ann. § 17.46 (Vernon Supp.2005).

Richardson–Eagle if either insurance company signed a contract with HISD. The commissions were for administrative services to be provided by Richardson–Eagle, including on-site enrollment services.

HISD determined the commissions had been included to compensate Richardson–Eagle for unwanted administrative services, rejected the proposals, and directed Mercer to negotiate directly with Standard and American Heritage to secure a better value for the district. Standard agreed to negotiate directly with Mercer to modify its disability proposal and ultimately agreed to include a 1.1 percent commission for Richardson–Eagle in the proposal. HISD would not have adopted the terms of the original proposal by Standard, having determined that the proposal was not the best value for the district. Subsequent negotiations led to decreased commissions; the premiums for HISD employees were reduced; and HISD concluded the revised Standard proposal was the best value and accepted it. Because American Heritage refused to negotiate directly with Mercer, HISD rejected its proposals in favor of the incumbent carrier. Richardson–Eagle's approval and participation was not sought on either of these changes.

## Standard of Review

We review the trial court's ruling on a summary judgment motion de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). We view the evidence in the light most favorable to the non-movant and, make all reasonable inferences and resolve all doubts in the non-movant's favor. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999).

The movant for a traditional summary judgment has the burden to show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). A defendant who moves for summary judgment must either disprove at least one element of each of the plaintiff's causes of action, or plead and conclusively establish each essential element of any affirmative defense, thereby rebutting the plaintiff's causes of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). If the movant can show that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a fact issue to defeat the motion for summary judgment. *Haight v. Savoy Apartments*, 814 S.W.2d 849, 851 (Tex.App.-Houston [1st Dist.] 1991, writ denied).

In a no-evidence summary judgment, the movant represents that no evidence exists as to one or more essential elements of the non-movant's claims, upon which the non-movant would have the burden of proof at trial. Tex.R. Civ. P. 166a(I); *See Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70–71 (Tex.App.-Austin 1998, no pet.). On appeal, we ascertain whether the non-movant produced more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)). If the evidence does no more than create a mere surmise or suspicion of fact, less than a scintilla of evidence exists. *See Merrell Dow Pharms., Inc.*, 953 S.W.2d at 711.

Mercer sought both traditional and no-evidence summary judgment, and Richardson–Eagle filed a traditional motion for partial summary judgment. *See*

Tex.R. Civ. P. 166a(c), (I). When, as here, both sides move for summary judgment, and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides to determine all questions presented, and render such judgment as the trial court should have rendered. *Comm's Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). Because the summary judgment order does not specify the ground or grounds on which the trial court relied for its ruling, we will affirm the summary judgment if any of the summary judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

### Tortious Interference with an Existing Contract

■ In its first issue, Richardson–Eagle contends summary judgment was improper on its tortious interference with an existing contract claim because a fact issue remained on each element of the cause of action, and because Mercer failed to prove the affirmative defense of justification as a matter of law. The elements of a cause of action for tortious interference with contractual relations are (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) that was a proximate cause of the plaintiff's damages; and (4) actual damage or loss. *Powell Indus., Inc. v. Allen,* 985 S.W.2d 455, 456 (Tex.1998); *Abetter Trucking Co. v. Arizpe,* 113 S.W.3d 503, 509 (Tex.App.-Houston [1st Dist.] 2003, no pet.). The classic proximate-cause tests for cause-in-fact and foreseeability apply to claims of tortious interference. *See Hill v. Heritage Res., Inc.,* 964 S.W.2d 89, 126

(Tex.App.-El Paso 1997, pet. denied). Establishing causation requires that the plaintiff bring forth sufficient facts so that the evidence, and logical inferences drawn from the evidence, support a reasonable probability that the defendant's acts or omissions were a substantial factor in bringing about injury. *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex. 1995); *Henry v. Houston Lighting & Power Co.,* 934 S.W.2d 748, 750 (Tex.App.-Houston [1st Dist.] 1996, writ denied). Though normally an issue of fact, proximate cause may be an issue of law if the facts are conclusive. *See Leitch v. Hornsby,* 935 S.W.2d 114, 119–20 (Tex.1996).

■ Richardson–Eagle contends that Mercer interfered with Richardson–Eagle's existing contracts with American Heritage and Standard, and that Mercer's interference caused Richardson–Eagle to lose the commissions it would have received from American Heritage and Standard, had HISD entered into contracts with those entities.[3] The RFP, however, explicitly stated that HISD was the only entity with the power to reject the proposals from American Heritage and Standard, and HISD initially rejected both proposals because they did not conform to the requirements of the RFP. At oral submission of this cause, Richardson–Eagle claimed that HISD had not, in fact, rejected its proposals, but rather, that it had rejected every other proposal, and that the Richardson–Eagle proposal was the only one that conformed to the requirements of the RFP. Yet, the record establishes that HISD chose the RFP method over the competitive-bidding method because HISD wanted more flexibility to negotiate after

---

**3.** Though Richardson–Eagle appears to have argued on summary judgment that Mercer interfered with existing or potential contracts between Richardson–Eagle and American Heritage, Standard, *and* HISD, Richardson– Eagle argues on appeal only that Mercer interfered with the relationship between Richardson–Eagle and the insurance companies, but *not* HISD.

proposals had been submitted. Accordingly, HISD's failure to reject the Standard and American Heritage proposals outright does not compel the conclusion that those proposals conformed to the RFP. Under the summary judgment record, HISD's failure to reject the proposals reflects that HISD wished to negotiate further with those entities. Furthermore, the alleged damages, in the form of lost commissions, do not arise from Mercer's interference with Richardson–Eagle's contracts with American Heritage or Standard, but from HISD's decision not to enter into contracts with entities that contained large commissions for Richardson–Eagle. Richardson–Eagle presents no evidence to contradict Mercer's proposition that it was Richardson–Eagle's failure to conform the proposals to the RFP, and not any action by Mercer, that caused HISD to reject the proposals.

In addition, with regard to Standard, HISD agreed to accept its proposal only after Mercer negotiated directly with Standard. Without that interference, Richardson–Eagle would likely have received no commission at all. With regard to American Heritage, its refusal to negotiate directly with Mercer negates any possibility of resulting damages because Mercer did not succeed in securing any proposal changes to Richardson–Eagle's detriment. Thus, there is no reasonable probability, under the summary judgment record here, that Mercer's conduct was a substantial factor in preventing Richardson–Eagle from receiving commissions from Standard or American Heritage. Accordingly, we hold that Mercer disproved proximate cause as a matter of law and that summary judgment was, therefore, proper on the tortious interference with existing contract claims. Having reached this conclusion, we need not address the other elements of this cause of action, or issue two, concerning Mercer's affirmative defense of justification.

We overrule Richardson–Eagle's first issue.

## Tortious Interference with Prospective Business Relationship

 In its third issue, Richardson–Eagle contends that summary judgment was improper on its claim of tortious interference with a prospective contract because a fact issue remains on each element of that cause of action. To establish a cause of action for tortious interference with prospective business relationships, a plaintiff must show that (1) there was a reasonable probability that the parties would have entered into a business relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. See Wal–Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 713 (Tex.2001); Brown v. Swett & Crawford of Texas, Inc., 178 S.W.3d 373, 381–82 (Tex.App.-Houston [1st Dist.] 2005, no pet.); Baty v. ProTech Ins. Agency, 63 S.W.3d 841, 858 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). To establish a claim for tortious interference, a plaintiff must prove that more than mere negotiations occurred. See Milam v. Nat'l Ins. Crime Bureau, 989 S.W.2d 126, 132 (Tex.App.-San Antonio 1999, no pet.); Caller–Times Publ'g Co. v. Triad Commc'ns, Inc., 855 S.W.2d 18, 24 (Tex. App.-Corpus Christi 1993, no writ). Though it is not necessary to prove that the contract would have certainly been made but for the interference, that result

must have been reasonably probable, considering all of the facts and circumstances attendant to the transaction. *Hill,* 964 S.W.2d at 109.

It is undisputed that no contract would arise between Richardson–Eagle and the insurance companies unless HISD formed a contract with the insurance companies. Because no reasonable probability existed that HISD would have entered into a contract with either insurance company under the original terms of their proposals, no reasonable probability existed that contracts between Richardson–Eagle and any insurance company could arise.

█ Although Richardson–Eagle claims that Mercer interfered with prospective contracts between Richardson–Eagle and Standard or American Heritage, the RFP generally required all quotes to be net of commissions and stated that no on-site enrollments would be allowed. Richardson–Eagle's proposals violated these requirements, and HISD accordingly refused to accept them. Leonard Strum, Chief Financial Officer for HISD, stated in an affidavit that HISD would not have agreed to the terms of the original Standard proposal, because they were not the best value for the district, but later negotiations with Standard led to a reduced commission, and HISD determined that the revised Standard proposal was the best value. That HISD was willing to negotiate with Standard and American Heritage regarding their proposals does not indicate that the proposals conformed to the RFP, but that HISD was willing to give these entities the opportunity to bring their proposals within

the requirements of the RFP. Any advice Mercer provided to HISD regarding which plans would provide the best value to its employees cannot be said to have prevented the formation of a relationship between Richardson–Eagle and American Heritage or Standard, given that HISD decided the terms of the RFP, and HISD alone had the power to reject the proposals. Mercer has demonstrated as a matter of law that no reasonable probability exists that, without Mercer's involvement, HISD would have agreed to Richardson–Eagle's non-conforming proposals. Accordingly, we hold that summary judgment was proper as to Richardson–Eagle's claim of tortious interference with a prospective business relationship.

We overrule Richardson–Eagle's third issue.

### Violations of Insurance Code

In its fourth issue, Richardson–Eagle claims that Mercer violated former article 21.21 sections 4(2) and 4(8) of the Insurance Code.[4] *See* Act of May 10, 2001, 77th Leg., R.S., ch. 290, § 1, 2001 Tex. Gen. Laws 548, 548–50 (repealed and recodified 2003) (current versions at TEX. INS.CODE ANN. §§ 541.051, 541.056 (Vernon Supp. 2005)) (former article 21.21, § 4). Former article 21.21 provided a cause of action for any person who sustained actual damages as a result of another's engaging in an act or practice prohibited by section 4 of the Article. *See* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 13, 1995 Tex. Gen. Laws 2988, 3000 (repealed and recodified 2003) (current version at TEX. INS.CODE

**4.** Richardson–Eagle also argues that Mercer violated several other Insurance Code provisions by practicing insurance without a license and receiving dual compensation, among others. Yet, these violations are asserted only in an attempt to defeat Mercer's justification defense. Because we hold that

Richardson–Eagle has not raised a fact issue on either of its tortuous interference claims, we need not address the alleged violations of the Insurance Code because they apply only to that defense. Accordingly, we address only the alleged violations under former article 21.21, section 4.

ANN. § 541.151 (Vernon 2005)) (former article 21.21, § 16).

In moving for no-evidence summary judgment and responding to Richardson–Eagle's motion, Mercer argued that Richardson–Eagle had no evidence that Mercer violated either section 4(2) or section 4(8) and that Richardson–Eagle asserted its article 21.21 claims "in the abstract, without any effort to connect the violations to actions by Mercer against the Plaintiff or to the harm that Richardson–Eagle perceives that it has suffered." We conclude that Richardson–Eagle has not demonstrated that it incurred actual damages, as required under the statute and, therefore, that Richardson–Eagle presented no evidence to raise a fact issue on its article 21.21 claims.[5]

Pursuant to former Article 21.21, section 16, Richardson–Eagle had the burden to show that any deceptive practices by Mercer caused Richardson–Eagle to incur damages. *See id.* ("Any person *who has sustained actual damages* caused by another's engaging in an act or practice declared in Section 4 of this Article to be unfair ... may maintain an action against the person or persons engaging in such acts.") (emphasis added); *see also Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 382–83 (Tex.2000) (noting that article 21.21 plaintiff must demonstrate actual damages); *see also Harris v. American Protection Ins. Co.,* 158 S.W.3d 614, 626 (Tex. App.-Fort Worth 2005, no pet.) (affirming directed verdict for insurer on article 21.21

claim because plaintiff neither pleaded nor proved recoverable damages under statute). Although Richardson–Eagle asserts that its damages include lost profits, which must be proven by competent evidence with reasonable certainty, *Texaco, Inc. v. Phan,* 137 S.W.3d 763, 771 (Tex.App.-Houston [1st Dist.] 2004, no pet.), Richardson–Eagle offered no evidence of lost profits.

■ Richardson–Eagle also failed to present evidence that it suffered damages caused by Mercer's alleged violations of article 21.21, section 4(2), under which it was unlawful to disseminate a statement "containing any assertion, representation, or statement with respect to the business of insurance which is untrue, deceptive or misleading." Richardson–Eagle argues that Mercer's deceptive statements include claiming to be licensed; claiming to be the exclusive agent in all matters related to HISD's insurance program; circulating statements that the proposals were not submitted by Richardson–Eagle and could be modified without Richardson–Eagle's consent; stating that it could and did seek insurance commissions at the same time that it was acting as paid consultant; and stating that it could and did rebate commissions to HISD.

But, even if we assume that Mercer engaged in these activities, Richardson–Eagle presented no evidence that they resulted in damage to Richardson–Eagle. For example, if it is true that Mercer lacked proper licensing and misled Rich-

---

**5.** We reject Richardson–Eagle's contention, presented by a footnote to its brief, that Mercer did not move for summary judgment on the ground of no actual damages and, therefore, that Richardson–Eagle's failure to prove damages could not have been a ground for the trial court's ruling. We note that Richardson–Eagle does not address the damages issue except by stating that it incurred "substantial damages." On reviewing the motions

for summary judgments and responses, however, we have determined that Mercer presented to the trial court its contention that the Article 21.21 claims fail because "Richardson–Eagle cannot possibly be damaged by any alleged violation of this section." See TEX.R. CIV. P. 166a(c) (proscribing rendition of summary judgment, except on issues presented to the trial court by "written motion, answer, or other response").

ardson–Eagle concerning those licenses, Richardson–Eagle did no articulate what it would have done differently or how the alleged deception resulted in harm. HISD decided to centralize benefits administration, and these centralization decisions, not any actions by Mercer, led HISD not to accept Richardson–Eagle's proposal. Richardson–Eagle has, therefore, not demonstrated a reasonable probability that, without Mercer's allegedly deceptive actions, HISD would have accepted Standard's and American Heritage's proposals, commissions and all, thus resulting in profit to Richardson–Eagle.

■ Richardson–Eagle failed similarly to demonstrate how any potential violation of former article 21.21, section 4(8) caused actual damages. Section 4(8) created a cause of action when a person induces a party to participate in an insurance contract by giving valuable consideration, such as a rebate of commissions. Mercer emphasized that it never received any commissions on any of the Richardson–Eagle products and never offset commissions to HISD from any Richardson–Eagle products. In addition, the purpose of offsetting commissions was to eliminate inducements to purchase insurance, not to create them. Arthur Dickerson, president of Mercer of Texas, stated in his affidavit that one of the primary goals of the consulting agreement was to ensure that Mercer had no financial stake in which insurance products HISD purchased. HISD, therefore, and not Mercer, insisted that any commissions Mercer received be used to offset the consulting fee. There is no evidence that Mercer rebated commissions to induce HISD to buy insurance products. Fur-

thermore, even if there were an inducement, there is no evidence that this would benefit Mercer or harm Richardson–Eagle in any way. There is no indication that, but for Mercer's rebates, HISD would have signed a contract with Standard or American Heritage, thus resulting in lost profits to Richardson–Eagle.

We hold that Richardson–Eagle presented no evidence that any potential Insurance Code violations caused actual damages to Richardson–Eagle, and, therefore, hold that summary judgment was proper as to its claims under former article 21.21.

Accordingly, we overrule Richardson–Eagle's fourth issue.

### Violations of the DTPA[6]

■ In its fifth issue, Richardson–Eagle claims that Mercer violated Business and Commerce Code (DTPA) sections 17.46(b)(5), (8), and (12). Tex. Bus. & Com. Code Ann. § 17.46 (Vernon Supp.2005). Mercer correctly contends, based on other DTPA provisions, that a DTPA claimant must be a "consumer" and, therefore, that Richardson–Eagle has standing under section 17.46(b)(12) only if it is a consumer. See id. § 17.50(a) (Vernon Supp.2005); see also Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 351 (Tex.1987). A "consumer" is one who "seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com.Code Ann. § 17.45(4) (Vernon 2002). Consumer status is required if the subsection either (1) specifically involves a consumer transaction, or (2) involves the misrepresentation of "goods or

---

6. Richardson–Eagle contends Mercer has waived any argument on this issue on appeal. It is irrelevant, however, that Mercer failed to address the DTPA claims in its brief, as an appellee need not raise cross-points or even file a brief to have this Court consider what

was presented to the trial court; the burden rests on the appellant to establish grounds for reversal. *Sullivan v. Booker*, 877 S.W.2d 370, 373 (Tex.App.-Houston [1st Dist.] 1994, writ denied).

services" acquired by the plaintiff. *Casteel,* 22 S.W.3d at 386.

 Richardson–Eagle's subsection (b)(5) claim fails because Richardson–Eagle is not a consumer, in that it did not attempt to purchase or lease anything from Mercer. *See id.* Its subsection (b)(8) claim fails because that subsection specifically involves the misrepresentation of goods or services, thus requiring consumer status, and Richardson–Eagle is not a consumer. Richardson–Eagle's subsection (b)(12) claim fails because any misrepresentations by Mercer were unrelated to Richardson–Eagle's rights, remedies, or obligations. The alleged misrepresentations occurred in an agreement between HISD and Mercer, and thus may have affected the rights or obligations of HISD, but not those of Richardson–Eagle. Richardson–Eagle has not shown any representations made to it by Mercer; on the contrary, all representations were made to HISD, Standard, and American Heritage. Accordingly, we hold that summary judgment was proper as to Richardson–Eagle's DTPA claims.

We overrule Richardson–Eagle's fifth issue.

## Conclusion

We hold that the trial court correctly rendered summary judgment. Specifically, summary judgment was proper as to (1) Richardson–Eagle's claim of tortious interference with an existing contract, because Mercer proved as a matter of law that its actions did not proximately cause any damages to Richardson–Eagle; (2) Richardson–Eagle's claim for tortious interference with a prospective business relationship, because Mercer demonstrated as a matter of law that there was no reasonable probability that HISD would have accepted the proposals submitted by Richardson–Eagle; (3) Richardson–Eagle's article

21.21 claims because Richardson–Eagle failed to present evidence of damages; and (4) Richardson–Eagle's DTPA claims, because Richardson–Eagle is not a consumer, and did not present evidence that raised a fact issue as to whether Mercer made any misrepresentations to Richardson–Eagle.

Accordingly, we affirm the judgment of the trial court. We deny all pending motions.