In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00482-CV
_____

**GEORGE E. RHYMES JR. AND RHYMES INDUSTRIAL FILTRATION & CONSULTING, L.L.C., Appellants**

**V.**

**FILTER RESOURCES, INC., Appellee**

**On Appeal from the 136th District Court**
**Jefferson County, Texas**
**Trial Cause No. D-194,154**

**MEMORANDUM OPINION**

Filter Resources, Inc. ("Filter") sued George E. Rhymes Jr. ("Rhymes") and Rhymes Industrial Filtration & Consulting, L.L.C. ("Industrial") for breach of contract, breach of fiduciary duty, and tortious interference. A jury found in favor of Filter. In eight appellate issues, Rhymes challenges the jury's verdict, the

1

admission of evidence, and the injunctive relief award.[1] Filter presents two cross-issues regarding damages and attorney's fees. We affirm the trial court's judgment.

## Factual Background

According to the record, Rhymes first became employed with Filter in 1998. James Metcalf Jr., Filter's chief executive officer and president, testified that Rhymes was a branch manager and salesman for Filter. There was testimony that Rhymes had access to confidential information, such as products, prices, contracts, and financial, vendor, and customer information. In 2000, Filter asked Rhymes to sign a contract that contained the following clause:

> The Employee shall not for a period of one year immediately following the termination of his employment with the Employer, either directly or indirectly:
>
> 1. Make known to any person, firm, or corporation the names and addresses of any of the customers of the Employer or any other information pertaining to them; or
>
> 2. Call on, solicit, or take away, or attempt to call on, solicit, or take away any of the customers of the Employer on whom the Employee called or with whom he became acquainted during his employment with the Employer, whether for himself or for any other person, firm, or corporation.

The contract also stated:

> The Employee during the term of employment under this agreement will have access to and become familiar with various trade secrets,

---

[1]We group Rhymes's complaints into eight issues.

consisting of formulas, patterns, devises, secret inventions, processes, and compliance [sic] of information, records, and specifications, customer lists, vendor lists, marketing strategies, pricing strategies, financial information, and specifications, which are owned by the Employer and which are regularly used in the operation of the business of the Employer. The Employee shall not disclose any of the aforesaid trade secrets, directly or indirectly, nor use them in any way, either during the term of this agreement or at any time thereafter, except as required in the course of his employment. All files, records, documents, drawings, specification, [sic] equipment and similar items relating to the business of the Employer, whether prepared by the Employee or otherwise coming into his possession, shall remain the exclusive property of the Employer and shall not be removed from the premises of the Employer under any circumstances whatsoever without the prior written consent of the Employer.

Rhymes testified that he did not want to sign the contract. According to Rhymes, his boss stated that it was just paperwork and not to worry; thus, Rhymes believed he was not bound by the contract. Rhymes admitted knowing that he might be sued if he competed with Filter.

Bridges testified that Rhymes told him he planned to leave Filter to go into a different business. Rhymes's last day of work with Filter was August 17, 2012, but Rhymes remained on Filter's payroll through the end of August. Bridges testified that Rhymes's Industrial business card listed the same cell phone number that he used while employed with Filter. Cheryl Rhymes, Rhymes's wife, testified that this was Rhymes's personal phone that he also used for business and that she paid Rhymes's phone bill, which Filter reimbursed. Rhymes testified that Filter paid his

3

phone bill and that he still uses the same phone number, but that he had the phone number before his employment with Filter. Bridges admitted that Rhymes brought the phone number and a cell phone with him when he began working for Filter. He testified that Filter subsequently paid for Rhymes's new cell phone and the cell phone bill.

Metcalf testified that Rhymes also used a planner to record business information but that Filter owned the information Rhymes recorded in the planner. Rhymes admitted taking his planner and some business cards when he left Filter, but he claimed to have had the planner before he went to work for Filter. Metcalf opined that Rhymes should not have taken the planner when he left Filter because the planner contained information that belonged to Filter.

Bridges testified that, within six weeks of leaving Filter, Rhymes was selling to five of Filter's customers. He and Metcalf testified that Rhymes's customers were all Filter customers. Cheryl testified that Industrial sells the same products as Filter and is a competitor of Filter. She was unaware that Industrial had any customers outside of those Rhymes served during his employment with Filter, but she claimed that each of those customers first contacted Rhymes. Rhymes also admitted that Industrial is in direct competition with Filter, that all of his customers are former Filter customers, and that Industrial sells almost all the same products

4

as Filter. He further admitted to calling on, soliciting, and selling products to Filter's customers. Rhymes explained that he did not believe he had violated the non-compete agreement because Filter's customers contacted him first.

Joshua Crookshank, an area manager for Filter, testified that before Rhymes left Filter, Rhymes took Crookshank to meet some of Filter's customers and Rhymes told the customers he was starting his own business. Alan Clarke testified that he is the president of Jonell, a company that manufactures filter elements. Rhymes told Clarke that he intended to go into the distribution business with a concentration on the natural gas market, which Clarke believed to be different from Filter's business. Rhymes told Clarke that he chose a different market because he had a non-compete agreement with Filter. At some point, Clarke became aware that Rhymes was ordering parts from Jonell on behalf of some of Filter's customers. Rhymes told Clarke that he spoke with an attorney and that the non-solicitation clause was not worth a "s---."

Harold Doucet, Filter's account manager, testified that Filter has a consignment agreement with Total Refining and that he learned of Rhymes's attempts to circumvent that agreement. He explained that a part Filter provides to Total, through the consignment agreement, had not been replenished by Filter but

5

had been replaced by Rhymes. He also testified that he saw Rhymes's business card on the desk of another one of Filter's customers.

According to Metcalf and Bridges, after Rhymes left, Filter's sales decreased by over a million dollars. Doucet testified that sales declined monthly and he could not recoup all the lost sales. Clarke testified that Filter does more business with Jonell than Rhymes but that Jonell's sales to Filter were "continually sliding[.]" Jeffrey Compton, a certified public accountant, testified that Filter's lost profits total $622,800.

The jury found that: (1) Rhymes failed to comply with the non-solicitation clause, the confidentiality and non-disclosure provisions, and his duties "not to compete with Filter Resources by establishing his own new, competing business, while still employed at Filter Resources[,]" "not to misuse Filter Resources' materials and resources to establish his own new, competing business, while still employed at Filter Resources[,]" and "to refrain from using Filter Resources' confidential and proprietary information, disclosed during employment with Filter Resources;" (2) appellants intentionally interfered with Filter's prospective contractual or business relations; (3) appellants did not have a good faith belief that their conduct was prohibited by the employment contract; (4) Filter was entitled to $620,000 in damages; (5) the harm caused to Filter resulted from malice; (6) Filter

6

was entitled to $0 in exemplary damages; and (7) Filter was entitled to $125,000 in attorney's fees. The trial court granted Rhymes's motion for judgment notwithstanding the verdict regarding attorney's fees, disregarded the jury's answer to question seven in light of the zero award for exemplary damages, conditionally granted injunctive relief requiring Rhymes to return the cell phone and SIM card, and denied additional injunctive relief.

## Legal Sufficiency

In issues one through six, Rhymes challenges the legal sufficiency of the evidence to support the jury's verdict. Under legal sufficiency review, we consider whether the evidence "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We view the evidence in the light most favorable to the verdict, credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010).

Rhymes's first, second, and third issues challenge the jury's findings that he breached the contract's non-solicitation provision, violated the contract's confidentiality and non-disclosure provisions, and breached his fiduciary duties. The one-year non-solicitation clause prohibited Rhymes from directly or indirectly

7

calling on, soliciting, or taking away, or attempting to call on, solicit, or take away any of Filter's customers on whom Rhymes had called or with whom he became acquainted during his employment with Filter. Additional provisions prohibited Rhymes from (1) making known to any person, firm, or corporation the names and addresses of Filter's customers or any other information pertaining to those customers; and (2) directly or indirectly disclosing or using any trade secrets during or after his employment.

An at-will employee may properly plan to go into competition with his employer and may take active steps to do so while still employed, and the employee has no general duty to disclose his plans to his employer. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 201 (Tex. 2002). An employee may not appropriate his employer's trade secrets, solicit his employer's customers during his employment, carry away employer information, such as customer lists, or act for his future interests at his employer's expense by using the employer's funds or employees for personal gain or by a course of conduct designed to hurt the employer. *Id*. at 202.

In this case, the jury heard evidence that, before leaving Filter, Rhymes incorporated Industrial and contacted Kim Jackson at RBF, one of Filter's customers, to obtain a new vendor form. Rhymes told Jackson that he was thinking

8

of leaving Filter and asked Jackson about the procedures for getting set up as a vendor. Rhymes also spoke with Jerry James at Koch Pipeline, another Filter customer, and provided James with Industrial's information. Rhymes testified that James called him for the purpose of helping him get set up with Koch. Rhymes's telephone records indicate that, while still on Filter's payroll, he initiated calls to some of Filter's customers.

The jury heard Cheryl and Rhymes testify that Industrial made sales to Filter's customers only after those customers first contacted Rhymes. Rhymes admitted that Industrial is a competitor of Filter, Industrial sells almost all the same products as Filter, and that he called on, solicited, and sold products to Filter's customers. Additionally, the record demonstrates that Industrial made sales to five of Filter's customers within the first six weeks of Rhymes leaving Filter and that within the first year of business, all of Industrial's customers were former Filter customers. Rhymes visited BASF, a Filter customer, on numerous occasions, filed a vendor application with BASF, took BASF employees shooting and hunting, and discussed BASF filters with Jonell before making a sale to BASF. The jury also heard Doucet testify that Rhymes circumvented a consignment agreement between Filter and Total.

9

Moreover, the jury heard Metcalf and Bridges testify that Rhymes had access to confidential information. Rhymes testified that he protected Filter's financial information during his employment and did not use it for his own purposes. He denied using any of Filter's pricing information. The jury heard Rhymes testify that, despite his access to Filter's pricing information and his disclaiming use of such information, he represented to his insurance company that Industrial's projected annual sales would be at least $750,000. Although Rhymes denied formulating this number based on sales to Filter's customers, the jury heard evidence that Industrial generated annual sales of $732,914.80.

As sole judge of the weight and credibility of the evidence, the jury was entitled to decide which evidence to believe and, therefore, could reasonably conclude that Rhymes violated the non-solicitation clause by directly or indirectly calling on, soliciting, or taking away Filter's customers on whom Rhymes had either called or become acquainted with during his employment. *See Wilson*, 168 S.W.3d at 819. The jury was entitled to reject Rhymes's testimony that he did not use Filter's confidential information, such as customer information and pricing lists, to further Industrial's business. *See id*. In doing so, the jury could reasonably conclude that Rhymes breached the contract's confidentiality and non-disclosure

10

provisions. *See id*. Additionally, the jury was asked if Rhymes violated *any* of the following fiduciary duties, to which the jury answered "yes:"

> Duty not to compete with Filter Resources by establishing his own new, competing business, while still employed at Filter Resources;

> Duty not to misuse Filter Resources' materials and resources to establish his own new, competing business, while still employed at Filter Resources[;]

> Duty to refrain from using Filter Resources' confidential and proprietary information, disclosed during employment with Filter Resources[.]

Although Rhymes was entitled to begin planning to compete with Filter during his employment, at the very least, the jury could reasonably conclude that Rhymes breached his fiduciary duty by engaging in a course of conduct designed to harm Filter, such as misusing Filter's resources to contact and obtain Filter's customers.[2] *See Johnson*, 73 S.W.3d at 201-02. Accordingly, we conclude that the evidence is legally sufficient to support the jury's findings. We overrule issues one, two, and three.

---

[2]With regard to breach of the duty to refrain from using Filter's confidential and proprietary information, Rhymes argues that "Question 2 [regarding breach of non-disclosure provisions] submits a breach of contract theory based on the contractual provisions in the Employment Contract which prohibit ownership in a competing corporation and disclosure of Filter Resources' confidential and proprietary information, the identical fiduciary duties submitted in Question 3 under a tort theory." According to Rhymes, "[t]he contractual provisions foreclose any tort liability for breach of fiduciary duty." However, as previously noted, the charge asked the jury whether Rhymes violated *any* of three fiduciary duties.

11

In issue four, Rhymes maintains that the evidence is legally insufficient to support the jury's finding that he and Industrial tortiously interfered with Filter's prospective contractual or business relations. To prevail on a claim for tortious interference, a plaintiff must prove the following:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). According to Rhymes, Filter failed to demonstrate an independent tort that proximately caused actual damage to Filter.

Intentional breach of fiduciary duty is a tort. *Brosseau v. Ranzau*, 81 S.W.3d 381, 396 (Tex. App.—Beaumont 2002, pet. denied). As previously discussed, the evidence is legally sufficient to support the jury's breach of fiduciary duty finding. When "a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942). According to Rhymes, the jury charge does not include a separate question regarding knowing participation. The jury was asked if "Rhymes and/or Rhymes

12

Industrial intentionally interfere[d] with Filter Resources' prospective contractual or business relations[.]" The trial court instructed the jury that tortious interference occurs, in part, when the party "acted with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct[.]"

To find that Industrial knowingly participated in Rhymes's breach, the jury would have to determine that (1) Industrial knew that Rhymes owed a duty to Filter and (2) Industrial was aware of its participation in the breach. *See DeYoung v. Beirne, Maynard & Parsons, L.L.P.*, No. 01-13-00365-CV, 2014 Tex. App. LEXIS 2965, at *15 (Tex. App.—Houston [1st Dist.] Mar. 18, 2014, no pet.) (mem. op.). Such findings are subsumed within the jury's conclusion that Industrial knew that interference with Filter's relationships was certain or substantially certain to occur as a result of Rhymes's conduct. The trial court was not required to submit a separate question on knowing participation. *See* Tex. R. Civ. P. 277 ("In all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions."); *see also Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 665-66 (Tex. 1999) ("While trial courts should obtain fact findings on all theories pleaded and supported by evidence, a trial court is not required to, and

13

should not, confuse the jury by submitting differently worded questions that call for the same factual finding.").

Rhymes also contends that knowing participation cannot support tortious interference by Industrial because it is a derivative tort rather than an independent tort. "Independently tortious" does not mean that the plaintiff must prove an independent tort; rather, it means that the "defendant's conduct would be actionable under a recognized tort." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). The jury heard evidence that Industrial relied on Rhymes's knowledge, sales, and solicitation of business. Cheryl testified that Industrial was formed with the knowledge that, if Rhymes solicited Filter's customers, he would be violating his employment contract. The record also indicates that Industrial knew that its customers were all previous customers of Filter. The record contains evidence supporting a conclusion that Industrial's conduct would be actionable under a recognizable tort, which is all Filter was required to show. *See id*. The jury could reasonably conclude that Industrial knew of the fiduciary duties Rhymes owed to Filter and knew that it was participating in Rhymes's breach of those duties. *See Coinmach Corp.,* 417 S.W.3d at 923; *see also Kinzbach Tool Co*., 160 S.W.2d at 514.

14

"The classic proximate-cause tests for cause-in-fact and forseeability apply to claims of tortious interference." *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 474 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). "Establishing causation requires that the plaintiff bring forth sufficient facts so that the evidence, and logical inferences drawn from the evidence, support a reasonable probability that the defendant's acts or omissions were a substantial factor in bringing about injury." *Id*. The record contains evidence demonstrating that, after Rhymes's departure, Jonell's sales to Filter began declining, Filter's sales substantially decreased, Filter's lost sales could not all be recouped, Filter lost several customers to Rhymes and Industrial, and Rhymes interfered with an existing consignment agreement. The jury was entitled to conclude that Filter presented sufficient facts to support a reasonable probability that Rhymes's conduct was a substantial factor in bringing about actual damage to Filter. *See id*. We overrule issue four.

In issue five, Rhymes contends that Filter failed to show damages proximately caused by breach of the non-solicitation clause, breach of the non-disclosure and confidentiality provisions, breach of fiduciary duty, and tortious interference. "Proximate cause comprises two elements: cause in fact and foreseeability." *Smith*, 307 S.W.3d at 774. The test for causation in fact is "whether

the defendant's act or omission was a substantial factor in causing the injury and without which the injury would not have occurred." *Id*. "Foreseeability requires only 'that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.'" *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 929 (Tex. 2015) (quoting *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 551 (Tex. 1985)).

Again, the record contains evidence demonstrating that Rhymes's breaches and tortious interference led to the loss of customers and, consequently, the loss of substantial profits that otherwise would have gone to Filter. As previously discussed, the jury heard evidence by which it could reasonably conclude that Rhymes's conduct was a substantial factor in causing harm to Filter. *See Smith*, 307 S.W.3d at 774. The jury could also reasonably conclude that Filter's injury, the loss of customers and profits, would not have occurred absent Rhymes's conduct. *See id*. That Filter would lose customers and sales is an injury that Rhymes should reasonably have anticipated would result from his conduct. *See Ryder Integrated Logistics, Inc.*, 453 S.W.3d at 929. We overrule issue five.

16

In issue six, Rhymes argues that the evidence is legally insufficient to support the jury's damages award. "[T]he jury has discretion to award damages within the range of evidence presented at trial." *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). "[T]he evidence need not correspond to the precise amount found by the jury." *Jefferson Cnty. v. Nguyen,* No. 09-13-00505-CV, 2015 Tex. App. LEXIS 8052, at *60 (Tex. App.—Beaumont July 31, 2015, no pet.) (mem. op.). "When the evidence at the trial supports a range of damages, 'an award within that range is an appropriate exercise of the jury's discretion, and a reviewing court is not permitted to speculate on how the jury actually arrived at its award.'" *Id.* (quoting *Drury Sw., Inc. v. Louie Ledeaux # 1, Inc.*, 350 S.W.3d 287, 292 (Tex. App.—San Antonio 2011, pet. denied)).

The jury awarded Filter $620,000 in damages for the period from August 18, 2012, to August 17, 2013. According to Compton, during this time frame, Rhymes generated $234,787 in profits from Filter's clients. Compton deducted $28,020 from this number to represent the amount of money Filter saved as a result of not having to pay Rhymes's salary. Accordingly, during the first year after Rhymes's departure, Filter lost $206,767 in profits. Compton further testified that, because of the actions that Rhymes took in that first year, Filter lost net profits of $622,800 over a five-year period. Additionally, Bridges testified that Industrial's total

17

income in year one ranged from $638,745 to $732,914, which was all generated from Filter's clients. Bridges testified that these profits would have remained with Filter but for Rhymes's actions. Based on this evidence, the jury could reasonably conclude that, because of Rhymes's breaches and tortious interference committed in the year following his departure from Filter's employ, Filter suffered $620,000 in damages. *See Nguyen*, 2015 Tex. App. LEXIS 8052, at **59-60 ("For a jury's damage award to survive a legal sufficiency challenge, there must be some evidence that a substantial loss occurred which affords a reasonable basis for estimating the amount of that loss."). Because the jury's award falls within the range of evidence presented at trial, we overrule issue six. *See Low*, 79 S.W.3d at 566; *see also Nguyen*, 2015 Tex. App. LEXIS 8052, at **59-60. We need not address Filter's first cross-issue.[3] *See* Tex. R. App. P. 47.1.

Evidentiary Challenge

In issue seven, appellants argue that any evidence of damages sustained after the contract's one-year non-solicitation term was improperly admitted as speculative. "We review a trial court's evidentiary rulings for abuse of discretion." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). We will

---

[3]In its first cross-issue, Filter asks this Court to, in the event we disagreed with Filter's arguments supporting the jury's damages award, set aside the damages award and enter judgment awarding damages apportioned for each of the three damages periods, totaling $620,000.

18

not reverse unless the error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1).

In his expert report, Compton provides three periods of lost profits. "Case 3" estimated lost profits assuming Filter suffered indefinite damage. Rhymes moved to exclude Case 3 on grounds that the one-year non-solicitation clause covers the period August 18, 2012, to August 17, 2013, but Case 3 attempts to recover $622,845.00 for the five-year period August 18, 2012, to August 17, 2017. Rhymes argued that that Case 3 was "irrelevant, unreliable, speculative and contrary to the terms of the Employment Contract." The trial court overruled Rhymes's objection to admission of testimony regarding Case 3. On appeal, without citation to record references, Rhymes argues that:

> The lost sales that comprise the future damages sought by Filter Resources for the 4 years after the expiration of the non-solicitation covenant are attributable to customers who had no contractual agreements with Filter Resources and who were free to stop sending business to Filter Resources at any time for any reason. This renders the damages sought by Filter Resources for the four years after the expiration of the non-solicitation covenant speculative and no evidence as a matter of law.

"Recovery for lost profits does not require that the loss be susceptible of exact calculation." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). "The amount of the loss must be shown by competent evidence with reasonable certainty." *Id*. "What constitutes reasonably certain evidence of lost

19

profits is a fact intensive determination." *Id*. "As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Id*. "The evidence must show that the lost profit damages are not uncertain or speculative." *Lamont v. Vaquillas Energy Lopeno, Ltd.*, 421 S.W.3d 198, 225 (Tex. App.—San Antonio 2013, pet. denied).

At trial, Compton explained that he reviewed Rhymes's and Filter's financial information and actual sales, lawsuit documents, and depositions. He testified that there are Texas guidelines that he must follow when formulating a calculation and that he followed these guidelines. Compton testified that he assumed that Rhymes's leaving Filter caused the loss of business and that Filter was damaged indefinitely by Rhymes's actions, which he defined as a five-year period. He described in detail the formula he used to determine Filter's lost profits. The record does not demonstrate that Compton's opinion was based on anything other than objective facts, figures, or data from which Filter's lost profits could be reasonably ascertained. *See Heine*, 835 S.W.2d at 84; *see also Lamont*, 421 S.W.3d at 224-225. Because the trial court did not abuse its discretion by admitting the complained-of evidence, we overrule issue seven.

20

Injunctive Relief

In issue eight, Rhymes contends that there is no basis for the trial court's award of injunctive relief. In its final judgment, the trial court conditionally granted Filter's request for injunctive relief requiring Rhymes to return his cell phone and SIM card should Rhymes fail to do so voluntarily. The trial court denied Filter's request for additional injunctive relief. On appeal, Rhymes maintains that the cell phone and SIM card are his personal property, Filter did not submit the issue of ownership to the jury, and without a jury finding on the issue, Filter has waived a right to relief.

"The jury does not determine the expediency, necessity, or propriety of equitable relief." *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979). "The determination of whether to grant an injunction based upon the ultimate issues of fact found by the jury is for the trial court, exercising chancery powers, and not the jury." *Id*. "Injunctive relief is recognized as a proper remedy to protect confidential information and trade secrets." *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 551 (Tex. App.—Dallas 1993, no writ.). "An injunction is appropriate when necessary to prohibit an employee from using confidential information to solicit his former employer's clients." *Id*.

The record indicates that Rhymes brought a particular cell phone number along with him when he began working for Filter. Filter proceeded to purchase a new cell phone, using this same number, for Rhymes and Filter paid at least a portion of Rhymes's cell phone bill during his employment. After leaving Filter, Rhymes took the cell phone, which contained information regarding Filter's customers, and used that cell phone to solicit Filter's customers. The jury found that Rhymes breached his employment contract with Filter, breached his fiduciary duties, and tortiously interfered with Filter's prospective business relations; thus, the trial court was entitled to conclude that Rhymes had engaged in a settled course of conduct and to assume that such conduct would continue. *See Tex. Pet Foods, Inc.*, 591 S.W.2d at 803-04. In so doing, the trial court could reasonably conclude that an injunction requiring Rhymes to return the cell phone and SIM card was necessary to prevent Rhymes from continuing to use Filter's confidential information to solicit Filter's customers. *See id*. at 803; *see also Rugen*, 864 S.W.2d at 551. We overrule issue eight.

### Attorney's Fees

In its second cross-issue, Filter argues that the trial court abused its discretion by finding that Filter was not entitled to attorney's fees as awarded by the jury. The jury awarded Filter $125,000 in attorney's fees for representation in

the trial court based on its conclusion that Rhymes breached the non-solicitation clause. Rhymes filed a motion for judgment notwithstanding the verdict, in which he contended that the Texas Covenants not to Compete Act (the "Act") prohibited an award of attorney's fees. The trial court granted Rhymes's motion on this issue. On appeal, Filter argues that it is entitled to injunctive relief under section 38.001(8) of the Civil Practice and Remedies Code because: (1) the jury found that Rhymes breached the contract's non-disclosure provision; and (2) the trial court awarded injunctive relief.[4]

In response, Rhymes argues that Filter's request for attorney's fees under section 38.001 is barred by a lack of presentment. "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2015). To recover such fees, "the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party[]" and "payment for the just amount owed

[4]Rhymes contends that Filter has waived its complaint with regard to breach of the non-disclosure provision. According to the record, in response to Rhymes's motion for judgment notwithstanding the verdict, Filter argued that Rhymes's argument ignored the fact that Filter requested injunctive relief. On appeal, Filter maintains that attorney's fees are authorized by section 38.001(8) because Filter received something of value in the form of injunctive relief because of Rhymes's breach of contract. Accordingly, we conclude that Filter's complaint is preserved for appellate review.

23

must not have been tendered before the expiration of the 30th day after the claim is presented." *Id*. § 38.002(2), (3). Presentment is "required to allow the person against whom the claim is asserted an opportunity to pay the claim within thirty days of receiving notice of the claim, thereby avoiding the obligation to pay attorney's fees." *Note Inv. Grp., Inc. v. Assocs. First Capital Corp.*, 476 S.W.3d 463, 485 (Tex. App.—Beaumont 2015, no pet.). "All that is necessary is that the party seeking attorney's fees show that it made an assertion of a debt or claim and a request for compliance to the opposing party, and that the opposing party refused to pay the claim." *Id*. Although a particular form of presentment is not required, "neither the filing of suit, nor the allegation of a demand in the pleadings can, alone, constitute presentment of a claim or a demand that a claim be paid." *Id*.

Filter maintains that it satisfied the presentment requirement because: (1) during his deposition, Rhymes "was confronted with evidence of his breach of the Employment Contract[]" and denied any breach, "thereby indicating his intention to continue operating his competing business[;]" (2) during mediation, Filter informed Rhymes's counsel that "Filter considered Rhymes to be in breach of the Employment Contract and demand[ed] that he stop[;]" and (3) "Filter made several demands far in advance of trial in this case, and it is undisputed that [Rhymes] did not respond or make any tender of payment within 30 days of any of the demands."

24

Filter does not cite this Court to any record references to substantiate its contention regarding mediation or any other demands made before trial. *See Genender v. USA Store Fixtures, LLC*, 451 S.W.3d 916, 927 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Evidence that the parties participated in settlement negotiations, without more, is no evidence of presentment."); *see also* Tex. R. App. P. 38.1(g), 38.2(a)(1). Moreover, "presentment" refers to a request or demand for payment or performance. *Note Inv. Grp., Inc.*, 476 S.W.3d at 485. Filter does not direct this Court to any request or demand for payment or performance arising out of the breach. *See id.*; *see also King v. Wells Fargo Bank, N.A.,* 205 S.W.3d 731, 734-35 (Tex. App.—Dallas 2006, no pet.) (It is the party's burden to direct the appellate court to evidence in the record that supports the party's contention; it is not an appellate court's duty to conduct an independent search of the record for evidence to support a party's position.). Robert Alan Black, Filter's attorney's fees expert, testified that he had not seen any presentment "one way or the other." Our review of the record has not revealed any evidence of presentment upon which the trial court could enforce the jury's attorney's fee award under section 38.001. We overrule Filter's second cross-issue and we affirm the trial court's judgment.

AFFIRMED.

                                   _____

                                        STEVE McKEITHEN
                                           Chief Justice

Submitted on November 16, 2015
Opinion Delivered April 14, 2016

Before McKeithen, C.J., Horton and Johnson, JJ.