**Opinion issued November 24, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00116-CV

———————————

**BILLY HELVESTON, RELIABLE BUSINESS RESOURCE, LLC, KEVIN NGUYEN, ROBERT BOWERS, AND ALBA EDM, INC., Appellants**

**V.**

**BSL INDUSTRIES INC. AND PACIFIC MANUFACTURING INC., Appellees**

On Appeal from the 269th District Court
Harris County, Texas
Trial Court Case No. 2018-56648

## MEMORANDUM OPINION

BSL Industries Inc. ("BSL") and Pacific Manufacturing Inc. ("Pacific") (collectively, "appellees") sued former employees, Billy Helveston, Kevin Nguyen, and Robert Bowers, and two competitors, Reliable Business Resources, LLC

("RBR") and Alba EDM, Inc. ("Alba") (collectively, "appellants"), for conduct related to the alleged misappropriation of appellees' trade secrets and confidential information. Appellants moved to dismiss the claims under the Texas Citizens Participation Act ("TCPA"),[1] but the trial court denied their motions. In this interlocutory appeal, appellants contend the trial court erred by refusing to dismiss appellees' claims under the TCPA.

We affirm.

## Background

Appellees are self-described "affiliated corporations that manufacture component parts for the oil, gas[,] and aerospace industries." In August 2018, appellees sued three former employees—Helveston, Nguyen, and Bowers. They also sued RBR, a limited liability company and former supplier of BSL, and Alba, a limited liability company formed by Bowers.

Appellees alleged that BSL hired Bowers as its President in April 2015 and that, pursuant to his employment agreement, Bowers "agreed to confidentiality with regard to BSL's confidential and proprietary information, including but not limited

---

[1] *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. The Legislature amended the TCPA in June 2019, but the amendments apply only to an action filed on or after September 1, 2019. Because this suit was filed in August 2018, the 2019 amendments to the TCPA do not apply. The TCPA as it existed before September 1, 2019 is referenced in this memorandum opinion.

2

to information relating to [BSL and Pacific's] customers, suppliers, component part pricing, manufacturing processes, marketing strategies, and pricing for the ultimate purchase of BSL products." Bowers also agreed to a non-compete provision providing that, for a specified time after the end of his employment, he would not compete with BSL.

Appellees further alleged in their suit that Nguyen, who was hired by BSL in June 2017, and Helveston, who was hired as Pacific's general manager in October 2017, signed similar confidentiality and non-compete agreements to those signed by Bowers. Likewise, RBR, a "major supplier of BSL," entered into a confidential disclosure agreement prohibiting RBR from competing with BSL for its customers for two years following BSL's last purchase from RBR.

According to BSL and Pacific, Bowers, while president of BSL and with the assistance of Nguyen, diverted an estimated $700,000 of funds belonging to BSL. Allegedly, Bowers and Nguyen used the diverted funds to develop and purchase materials for Alba, a company formed by Bowers when he worked for BSL. While he was still an employee of BSL, Bowers received compensation from Alba.

Appellees asserted that "Bowers, through Alba EDM, directly and wrongfully competed with BSL for customers and by selling the same component parts as sold by BSL." And, "Bowers conspired with Helveston and Nguyen to destroy BSL and Pacific" by "entering into contracts on their behalf to sell products at extremely low

3

prices, and ordering equipment on behalf of BSL and/or Pacific, but diverting the delivery of such equipment and property to Alba."

On March 19, 2018, Bowers announced his resignation from BSL. That same day, Bowers signed agreements on behalf of appellees purporting to release RBR and Helveston from "their respective agreements with BSL and Pacific," including the non-disclosure and non-compete provisions.

Although Nguyen continued to work for BSL following Bowers' resignation, appellees alleged in their lawsuit that Nguyen was secretly working with the other appellants "to wrongfully convert BSL property and equipment, including BSL's confidential and proprietary information, and . . . facilitate RBR and Alba EDM competing with BSL and Pacific." Helveston, who resigned from Pacific in 2018, went to work for RBR and allegedly began soliciting Pacific's customers.

Appellees claimed that this wrongful conduct destroyed their business reputations and forced them to cease operations. Appellees pleaded various claims against appellants, including breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, tortious interference with prospective business relations, tortious interference with existing contracts, fraud, conspiracy, misappropriation of trade secrets, business disparagement, and conversion.

Appellants moved to dismiss appellees' claims under the TCPA, arguing that that the claims were related to appellants' exercise of the rights of association and

free speech.[2]  Appellees responded that appellants failed to meet their burden to show that the TCPA applies in this case and, even if they had, there was sufficient evidence of the claims to avoid dismissal.  The trial court denied appellants' motions to dismiss.

## Dismissal under the TCPA

Appellants argue that the trial court erred by denying their TCPA motions to dismiss because (1) they satisfied their initial burden to show that the TCPA applies and (2) appellees failed to establish by clear and specific evidence a prima facie case of each essential element of their claims.  RBR also argues, as subsidiary issues, that it established valid defenses to appellees' claims and that the commercial-speech exemption is inapplicable.[3]

---

[2]  Appellants also moved to strike portions of the evidence that appellees offered in support of their responses to the TCPA motions to dismiss.  Although the trial court denied the motions to strike filed by RBR, Nguyen, Bowers, and Alba, the trial court did not enter an order on Helveston's motion to strike.

[3]  Bowers, Nguyen, and Alba further complain about the trial court's order denying their motion to strike.  But the trial court's orders denying appellants' motions to dismiss state that the trial court considered the motions, the responses, the pleadings on file, and the argument of counsel—they do not state that the trial court considered any of the parties' evidence.  Moreover, apart from one sentence noting that their "objections and motions are comprehensive and clearly state the grounds the evidence should not be admitted," Bowers, Nguyen, and Alba make no argument and cite to no authority in their brief to support their complaint. *See Sturm v. Phil Arms Ministries, Inc.*, No. 14-99-01086-CV, 2001 WL 333228, at *6 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (mem. op.) (appellant waived complaint when it provided no argument and no authority in support in its brief).

5

## A. Standard of Review

We review the denial of a TCPA motion to dismiss de novo. *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Whether the TCPA applies is an issue of statutory interpretation that we also review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

## B. Applicable Law

The TCPA "is a bulwark against retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern." *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019). It is intended "to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *In re Lipsky*, 460 S.W.3d 584, 589 (Tex. 2015) (orig. proceeding).

A party invoking the TCPA's protections by filing a motion to dismiss must show by a preponderance of the evidence that the TCPA applies. *See* Tex. Civ. Prac. & Rem. Code §§ 27.003(a), 27.005(b). The version of the TCPA that applies here mandates the dismissal of a "legal action" that is "based on, relates to, or is in response to the party's exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association." *Id.* § 27.005(b); *see also In re Lipsky*, 460 S.W.3d at 586–87. A "legal action" can consist of an entire lawsuit. *Id.* § 27.001(6);

6

*see also Creative Oil and Gas, LLC v. Lona Hills Ranch LLC*, 591 S.W.3d 127, 131

(Tex. 2019).

Once this initial showing is made, the burden shifts to the non-movant to

establish "by clear and specific evidence a prima facie case for each essential

element of the claim in question." TEX. CIV. PRAC. & REM. CODE § 27.005(c). The

non-movant can avoid the burden-shifting requirement by showing that one of the

TCPA's exceptions applies, such as the commercial-speech exemption. *See id.*

§ 27.010(b).

Here, appellants maintain that they satisfied their initial burden to show that

the TCPA applies because they proved by a preponderance of the evidence that

appellees' claims are based on, relate to, or are in response to appellants' exercise of

the rights of association and free speech.[4] In light of this Court's decision in

*Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457 (Tex. App.—Houston [1st Dist.] 2020,

pet. dism'd) (en banc), we disagree.[5]

---

[4] Appellants do not argue that appellees' claims are based on, related to, or are in response to the appellants' right to petition.

[5] Appellees do not contest appellants' contention on appeal that they met their initial burden of showing that appellees' claims are a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech [or] the right of association." TEX. CIV. PRAC. & REM. CODE § 27.005(b). That, however, does not prevent this Court from addressing the issue as raised by appellants. Indeed, it is irrelevant that appellees have failed to address this argument in their brief. It is appellants' burden to demonstrate the grounds for reversal on appeal, and our job as the reviewing court is to independently determine those grounds and whether the TCPA applies here. *See Richardson-Eagle, Inc. v. William M. Mercer,*

## C. Right of Association

When this suit was filed, the TCPA defined the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend *common interests*." TEX. CIV. PRAC. & REM. CODE § 27.001(2) (emphasis added). In their motions to dismiss, appellants asserted that appellees' claims are based on, related to, or are in response to appellants' alleged communications about a common interest—competing against appellees in the marketplace. Specifically, appellants pointed to appellees' allegations that the appellants:

- "violated their agreements with [appellees] by competing with [appellees] and by using and disclosing [appellees'] confidential and proprietary information";

- "gave themselves and each other substantial assistance and encouragement in committing various breaches of duty, with knowledge that the individual [appellants'] conduct were breaches of duty and with the intent of assisting and encouraging the other [appellants] to commit the breaches";

- "abused their positions of trust by disclosing and using [appellees'] confidential trade secret information to illegally aid [appellants] both individually and/or jointly";

---

*Inc.*, 213 S.W.3d 469, 478 n.6 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("It is irrelevant, however, that [appellee] failed to address the DTPA claims in its brief, as an appellee need not raise cross-points or even file a brief to have this Court consider what was presented to the trial court; the burden rests on the appellant to establish grounds for reversal."); *Sullivan v. Booker*, 877 S.W.2d 370, 373 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (rejecting appellant's argument that appellee waived any argument on issues on which they failed to respond on appeal because "[a]ppellee's failure to respond to appellants does not entitle appellants to a reversal").

8

- "conspired to breach their contracts with [appellees] and to breach Bowers and Helveston's fiduciary duties to [appellees] by planning to and having Bowers attempt to release Helveston and RBR from their obligations to [appellees]";

- "conspired to divert business and customers from [appellees] to RBR in violation of their respective agreements with [appellees]";

- "engaged in this conspiracy in an attempt to divert all of [appellees'] customers to competing business"; and

- "misappropriated [appellees'] trade secrets."

According to appellants, these alleged communications implicated their right of association.

In *Gaskamp,* this Court concluded that "with respect to the pre-amendment version of the TCPA, the proper definition of 'common' in the phrase 'common interests' [as used to define the exercise of the right of association] is 'of or relating to a community at large: public.'" *Gaskamp*, 596 S.W.3d at 476. There, the plaintiff alleged that former employees had jointly formed a new business venture, misappropriated trade secrets, and conspired to commit related torts to enrich themselves. *See id.*

Because the allegations in *Gaskamp* "involved misappropriating . . . trade secrets and conspiring to commit related torts, benefit[ing] only the five alleged tortfeasors," and the plaintiff's pleading did not allege any "public or community interests," the Court held that the defendants did not meet their burden of showing,

by a preponderance of the evidence, that the plaintiff's suit was based on, related to, or was in response to the defendants' exercise of the right of association. *Id.*

The same is true in this case. Appellees' claims are all based on Bowers', Nguyen's, and Helveston's alleged misappropriation of confidential information, and the sharing and communication of that confidential information with RBR and Alba, in an attempt to develop and promote a competing business enterprise. No "public or community interest" is alleged; rather, the allegations implicate private interests that benefit only the private parties involved in the intended business venture. *See id.*[6]

As such, we conclude that appellants did not meet their burden of showing by a preponderance of the evidence that BSL and Pacific's claims are based on, related to, or are in response to an exercise of appellants' right of association.

**D.    Right of Free Speech**

In their motions to dismiss, appellants also argued that appellees' claims were based on the exercise of their right to free speech. The definition of "exercise of the

---

[6]     *See also Griffith Techs., Inc. v. Packers Plus Energy Services, (USA), Inc.*, No. 01-18-00674-CV, 2020 WL 4354713, at *5 (Tex. App.—Houston [1st Dist.] July 30, 2020, no pet.) (mem. op.) (holding counterclaims were not related to exercise of right of association because claims were based on parties' joint conduct in developing and promoting competing business enterprise); *Newpark Mats & Integrated Services, LLC v. Cahoon Enterprises, LLC*, 605 S.W.3d 671, 680 (Tex. App.—Houston [1st Dist.] 2020, no pet.) ("Newpark's association (internally and externally) to express, promote, and pursue a common interest, namely, to form a competing business, is not a public or community interest; it is a private interest that benefits only the private parties involved in the intended business venture.").

right to free speech" is "a communication made in connection with *a matter of public concern*." TEX. CIV. PRAC. & REM. CODE § 27.001(3) (emphasis added). At the time this suit was filed, the statutory definition of a "matter of public concern" included "an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service *in the marketplace*." TEX. CIV. PRAC. & REM. CODE § 27.001(7) (emphasis added).

Appellants argued that appellees' allegations implicate their right to free speech because they alleged that appellants engaged in various communications among each other, as well as with various third-party clients and vendors, about a "good, product, or service in the marketplace." In support, appellants pointed to appellees' allegations that:

- Appellants "compet[ed with] and solicit[ed] BSL customers";

- Appellants "us[ed] and disclos[ed] BSL's confidential and proprietary information";

- "RBR aided and abetted Helveston in breaching his fiduciary duty to Pacific by having Helveston supply RBR with Pacific's confidential information, and by having him solicit Pacific's customers on RBR's behalf";

- Appellants redirected "opportunities to RBR and Alba EDM by making representations to and impermissibly soliciting prospective clients/customers of [appellees], with the intent that [appellees'] further business relationships with these clients would not occur";

11

- Appellants "knowingly and intentionally misrepresented their intentions and scheme to wrongfully use and divert [appellees'] confidential information, supplies and materials to compete with [appellees]";

- Appellants "falsely represented to [appellees] that they were going to be loyal employees of [appellees] and that [appellants] would do nothing to interfere with [appellees'] business"; and

- Appellants "published false and disparaging information about [appellees] to [appellees'] customers, clients[,] and others."

But this Court also addressed, and rejected, similar arguments in *Gaskamp,* where we concluded:

> Contrary to [defendants'] reading of the statute, "not every communication related somehow to one of the broad categories set out in section 27.001(7) always regards a matter of public concern." "The words 'good, product, or service in the marketplace' . . . do not paradoxically enlarge the concept of 'matters of public concern' to include matters of purely private concern." "[T]he 'in the marketplace' modifier suggests that the communication must have some relevance to a public audience of potential buyers or sellers." Although the Supreme Court of Texas has "previously held that private communications are sometimes covered by the TCPA[,] . . . [t]hese prior cases involved environmental, health, or safety concerns that had public relevance beyond the pecuniary interests of the private parties involved."

596 S.W.3d at 476 (quoting and citing *Creative Oil & Gas*, 591 S.W.3d at 137).

Accordingly, *Gaskamp* determined that communications between former employees related to the employees' alleged conduct of misappropriating, sharing, and using the plaintiff's trade secrets and conspiring with one another in furtherance of their tortious actions did not constitute an exercise of their free-speech rights because these communications "had no potential impact on the wider community or a public audience of potential buyers or sellers. In short, the communications had

12

no public relevance beyond the pecuniary interests of the private parties." *Id.* at 477; *see also Creative Oil & Gas*, 591 S.W.3d at 137 ("A private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words.").

This Court also held in *Gaskamp* that communications made by the plaintiff's former employees in soliciting and procuring business from a third party did not constitute an exercise of the employees' free-speech rights because those communications did not have any "relevance to a public audience of buyers or sellers but instead were limited to 'the pecuniary interests of the private parties involved.'" 596 S.W.3d at 479 (quoting *Creative Oil & Gas*, 591 S.W.3d at 136).

The same is true here. Appellants' alleged communications amongst themselves, and with third-party customers and vendors, are related to their alleged misappropriation, sharing, and communication of appellees' confidential information in an attempt to develop and promote a competing business venture. Like the alleged communications in *Gaskamp*, these communications "do not have relevance to a public audience of buyers or sellers but instead were limited to 'the pecuniary interests of the private parties involved.'" *Id.*; *see also Griffith Techs., Inc.*, 2020 WL 4354713, at *6 (concluding that plaintiffs' communications regarding development and promotion of competing business enterprise did not have any public relevance "beyond the pecuniary interest of the private parties" and, thus,

defendants' counterclaims were not related to plaintiffs' exercise of right of free speech). As such, these communications do not involve "a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(7)(E).

Accordingly, we conclude that appellants also did not meet their initial burden of showing by a preponderance of the evidence that appellees' claims are based on, related to, or are in response to an exercise of appellants' right of free speech.[7] As a result, appellants failed to demonstrate that the TCPA applies.

## Conclusion

Because neither the exercise of the right of association nor the exercise of the right of free speech is implicated here, the trial court did not err by denying appellants' TCPA motions to dismiss. We affirm the trial court's orders.

Terry Adams
Justice

Panel consists of Chief Justice Radack and Justices Hightower and Adams.

---

[7] Because we conclude that the TCPA does not apply, we need not address appellants' additional arguments regarding the statute. *See, e.g.*, *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 856 n.6 (Tex. App.—Austin 2018, pet. denied) ("Because we hold that the TCPA does not apply, we do not reach the second step in the TCPA analysis of whether [the non-movant] met its burden to prove a prima facia case."); *see also* TEX. R. APP. P. 47.1.