**Opinion issued April 20, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00674-CV

———————————

## RUTH AWAH, Appellant

## V.

## SYNERGENX PHYSICIAN SERVICES, PLLC, Appellee

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-36587**

---

## MEMORANDUM OPINION

Appellee SynergenX Physician Services, PLLC ("SynergenX") sued appellant Ruth Awah for conduct related to the alleged misappropriation of SynergenX's trade secrets and confidential information. Awah moved to dismiss

under the Texas Citizens Participation Act ("TCPA"),[1] but the trial court denied her motion. In this interlocutory appeal, Awah contends the trial court erred by refusing to dismiss SynergenX's claims under the TCPA.

We affirm.

## Background

In May 2019, SynergenX, a company offering "full-service health and wellness care," including hormone replacement therapy, weight loss management, and general wellness treatment, filed suit against Awah, a former employee. SynergenX claimed that Awah violated the terms of a confidentiality and non-compete agreement "by improperly accessing the SynergenX system, by removing and disclosing confidential information of SynergenX, and by soliciting patients of SynergenX for her competing business." SynergenX sought injunctive relief and monetary damages against Awah.

In its petition, SynergenX alleged that it hired Awah as a "service provider" on April 24, 2017, and that she provided "medical services to SynergenX patients at its clinic located in Sugar Land" until she voluntarily terminated her employment on February 1, 2019. SynergenX alleged that, as a service provider, Awah had access

---

[1] *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. The Legislature amended the TCPA in June 2019, but the amendments apply only to an action filed on or after September 1, 2019. Because this suit was filed in May 2019, the 2019 amendments to the TCPA do not apply. The TCPA as it existed before September 1, 2019 is referenced in this memorandum opinion.

2

to SynergenX's confidential information and trade secrets, including "inventions and know how, pricing policies, market research and analysis, information regarding current a[nd] prospective patients, information regarding SynergenX employees, financial data and information, [and] business plans and processes."

To protect this confidential and proprietary information, SynergenX alleges that it entered into a Confidentiality, Non-Disclosure & Non-Competition Agreement (the "Agreement") with Awah "for the specific purpose of protecting SynergenX's trade secrets and confidential information."[2] Under the terms of the Agreement, SynergenX agreed to provide Awah with its confidential and proprietary information in exchange for Awah's non-disclosure obligations and non-compete covenants. Specifically, the Agreement prohibited Awah from disclosing the confidential information to third parties, using the confidential information for the benefit of anyone other than SynergenX, and removing the confidential information from SynergenX's premises. It also required Awah to return all confidential

---

[2]   In its response to Awah's motion to dismiss and its First Amended Petition, filed on August 1, 2019, SynergenX notes that Awah actually entered into two non-compete agreements. The first was signed by Awah on April 27, 2017 and coincided with her new employment with SynergenX. The second had an effective date of January 1, 2018 and, according to SynergenX, forms the basis of its allegations and Awah's motion to dismiss. Because SynergenX's allegations in both its original petition and first amended petition are based off alleged violations of the January 1, 2018 agreement, all references to "the Agreement" in this opinion are to the January 1, 2018 agreement.

information to SynergenX upon the termination of her employment. For 12 months following the termination of her employment, Awah was not permitted to:

> (i) solicit (or assist another in soliciting) and Covered Account or Prospective Account for business involving products or services that are competitive with those offered by [SynergenX] at any time in the 24-month period preceding termination of [Awah's] employment with [SynergenX]; or (ii) communicate with (or assist another in communicating with) any Covered Account or Prospective Account for the purpose of causing that Covered Account or Prospective Account to terminate or diminish its business relationship or prospective business relationship with [SynergenX].

The Agreement defined "Covered Account or Prospective Account" to include "any patient to whom [SynergenX] has sold its products or services" or "any other patient with whom [Awah] had contact on behalf of [SynergenX] in the 24-month period preceding termination of [Awah's] employment with [SynergenX]."

The Agreement also provided that Awah would not, for a period of two years following the termination of her employment, "solicit or induce . . . any person employed by . . . [SynergenX] . . . to terminate his/her employment or agency or independent contractor relationship with [SynergenX]." Finally, the Agreement prohibited Awah from "work[ing] for a business that provides male or female hormone replacement therapy or health and wellness services within a 10[-]mile radius from any location worked in for [SynergenX]" for the 12-month period following her termination.

4

On January 2, 2019, Awah tendered her resignation to the Chief Executive Officer of SynergenX, Wayne Wilson, citing the need to "attend to some family and personal needs" and stating that her last day would be February 2, 2019. SynergenX alleged that, in fact, Awah "was in the process of opening a competing business, offering the same types [of] hormone replacement therapies, weight management, and other patient services as SynergenX." SynergenX alleged that Awah's competing business, AndroGenX, had a similar name and company logo to SynergenX.

SynergenX acknowledged in its petition that AndroGenX's office was located more than ten miles from the SynergenX facility where Awah worked, so she did not violate of the Agreement by simply establishing a competing business. According to SynergenX, however, Awah's other actions before and after she left SynergenX violated the confidentiality and non-solicitation provisions of the Agreement.

Specifically, SynergenX alleged that it required providers to complete their follow-up clinic notes within 72 hours after seeing a patient. Additionally, as a departing provider, Awah was permitted 72 hours of access to the SynergenX Electronic Medical Records ("EMR") system after her last day of employment so that she could access patient records and complete her clinic notes. Although Awah originally indicated that her last day with SynergenX would be February 2, 2019,

5

she notified SynergenX on February 1 that she would not be in the following day. According to SynergenX, Awah saw her last patient on February 1 and therefore she was required to enter and sign her last patient notes by February 4. However, she did not complete her last patient record until February 6. Additionally, Awah changed her network password on February 5, before it was set to expire,[3] and continued to access the network until February 11. Between February 6 and 11, Awah "made 1,153 actions on the EMR system," "logged over 10 hours *after* she had completed and signed her last patient note," and "printed documents regarding two SynergenX patients whose notes she had completed the previous week."

SynergenX alleged that "Awah's purpose in improperly accessing patient record[s] became clear within a few weeks of her departure from SynergenX, when patients reported to employees of the Sugar Land clinic that Awah was soliciting them as patients for her new clinic." Because "Awah's only source of patient contact information was SynergenX's patient records," SynergenX alleged that "her actions in removing this information and soliciting SynergenX's patients violates the terms of the Agreement." Based on these allegations, SynergenX sued Awah for violations of the Texas Uniform Trade Secrets Act ("TUTSA"), breach of contract, breach of fiduciary duty, and for violations of the Harmful Access by Computer Act

---

[3]     According to SynergenX, because Awah notified it that her last day was to be February 2, 2019, her account and access to the SynergenX network was set to expire on February 5.

("HACA") and sought monetary damages and a temporary restraining order and injunction.[4]

On June 27, 2019, Awah moved to dismiss the suit under the TCPA. Awah contended that the TCPA applied to SynergenX's claims against her because each of the causes of action implicated her rights to free speech and association as they "are based on, relate to, or were filed in response to [Awah's] communications and association, including her alleged acts which involve accessing, disclosing, and using confidential information and trade secrets for solicitation of patients for AndroGenX."

The trial court denied Awah's motion, and she appealed.

**Dismissal under the TCPA**

In one issue, Awah contends that the trial court erred by denying her motion to dismiss under the TCPA because (1) she met her burden to show that the TCPA applies to SynergenX's claims, (2) the commercial-speech exemption does not apply, (3) the preempted claims for breach of fiduciary duty and HACA must be dismissed with prejudice, (4) SynergenX cannot show clear and specific evidence of

---

[4]     After Awah moved to dismiss the petition under the TCPA, but before the trial court ruled on her motion, SynergenX filed a First Amended Petition. In the amended petition, SynergenX nonsuited its breach of fiduciary and HACA claims, leaving only its TUTSA and breach of contract claims against Awah. We still consider the entirety of Awah's TCPA motion to dismiss because it constitutes a request for affirmative relief that survives nonsuit. *See Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 468–69 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc).

each element of its causes of action, (5) she established a defense to the breach of contract claim, and (6) remand is required to determine her attorney's fees and costs. We disagree with Awah's initial contention that she has demonstrated the threshold requirement of the TCPA's applicability in this case. Because this is dispositive of Awah's appeal, we do not reach Awah's remaining arguments.

## A. Standard of Review

We review de novo the denial of a TCPA motion to dismiss. *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). In making this determination, the court views the pleadings and evidence in the light most favorable to the nonmovant. *Schimmel v. McGregor*, 438 S.W.3d 847, 855–56 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Whether the TCPA applies is an issue of statutory interpretation that we also review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

## B. Applicable Law

The TCPA "is a bulwark against retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern." *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019). It is intended "to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *In re Lipsky*, 460 S.W.3d 584, 589 (Tex. 2015) (orig. proceeding).

A party invoking the TCPA's protections by filing a motion to dismiss first must show by a preponderance of the evidence that the TCPA applies. TEX. CIV. PRAC. & REM. CODE §§ 27.003, 27.005(b). The version of the TCPA that applies here mandates the dismissal of a "legal action" that is "based on, relates to, or is in response to the [moving] party's exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association." *Id.* § 27.005(b); *In re Lipsky*, 460 S.W.3d at 586–87. A "legal action" can consist of an entire lawsuit. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 131 (Tex. 2019).

Once the movant shows that the TCPA applies, the burden shifts to the nonmovant to establish "by clear and specific evidence a prima facie case for each essential element" of its claim. TEX. CIV. PRAC. & REM. CODE § 27.005(c). The nonmovant can avoid this burden-shifting requirement by demonstrating that one of the TCPA's exceptions applies, such as the commercial-speech exemption. *Id.* § 27.010(b).

If the trial court dismisses the legal action under the TCPA, the court "shall award" to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter. *Id.* § 27.009(a).

9

In her first argument, Awah asserts that she satisfied her initial burden to show, by a preponderance of the evidence, that SynergenX's claims are based on, related to, or are in response to her exercise of her right to association and her right to free speech.[5] Applying this Court's en banc decision in *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 476 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc), we disagree.[6]

## C. Exercise of Right of Free Speech

Awah argues that the TCPA applies to SynergenX's lawsuit because it is based on, related to, or is in response to her exercise of the right of free speech. The

---

[5] Awah does not argue that SynergenX's claims are based on, related to, or are in response to Awah's right to petition.

[6] SynergenX does not contest Awah's contention on appeal that she met her initial burden of showing that SynergenX's claims are a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech [or] the right of association," instead arguing only that the commercial-speech exemption applies or, alternatively, that it met its prima facie burden as to each of its claims. TEX. CIV. PRAC. & REM. CODE § 27.005(b). That, however, does not prevent this Court from addressing the issue as raised by Awah. Indeed, it is irrelevant that SynergenX has failed to address this argument in its appellate brief since it is the appellant's burden to demonstrate grounds for reversal on appeal and our job, as the reviewing court, to independently determine those grounds and whether the TCPA applies. *See Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 478 n.6 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("It is irrelevant, however, that [appellee] failed to address the DTPA claims in its brief, as an appellee need not raise cross-points or even file a brief to have this Court consider what was presented to the trial court; the burden rests on the appellant to establish grounds for reversal."); *Sullivan v. Booker*, 877 S.W.2d 370, 373 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (rejecting appellant's argument that appellee waived any argument on issues to which they failed to respond on appeal because "[a]ppellee's failure to respond to appellants does not entitle appellants to a reversal").

TCPA defines the "exercise of the right to free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). At the time this suit was filed, a "matter of public concern" included an issue related to: "(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7).

Specifically, Awah argues that SynergenX's lawsuit implicates her exercise of the right to free speech because it is based on Awah's communications "with AndroGenX in order to start a 'competing' business" and "with one patient in order to solicit the patient for treatment at AndroGenX." In support of her argument that her alleged communications with AndroGenX implicate the right to free speech, Awah points to SynergenX's allegations that:

- Awah misappropriated SynergenX's proprietary information in order to establish and profit from her new, competing business, AndroGenX;

- This proprietary information, including protocols, procedures, and practices, "is a roadmap for [Awah's] new, competing business, AndroGenX," which Awah improperly accessed via SynergenX's EMR and "use[d] the improperly obtained information for AndroGenX"; and

- "As a result of her use and disclosure of SynergenX's trade secrets, [Awah] was able to access information which SynergenX spent money acquiring. [Awah] was thus able to start her new, competing business without the expense incurred by SynergenX because instead of using funds to obtain her own trade secrets, she simply took SynergenX's information and used it for the advancement of AndroGenX."

11

In support of her argument that her alleged communications with a patient implicate the right to free speech, Awah points to SynergenX's allegations that:

- "[W]ithin a few weeks of Awah's departure, a current patient of SynergenX's Sugar Land clinic reported that Awah was soliciting him/her as a patient for her new clinic"; and

- Awah "solicited that patient for treatment at Awah's new business, AndroGenX."

In light of recent decisions from the Texas Supreme Court and this Court, we disagree that these communications implicate the right to free speech. *See Creative Oil & Gas*, 591 S.W.3d at 137; *Gaskamp*, 596 S.W.3d at 476.

The Texas Supreme Court explained in *Creative Oil & Gas*, a decision issued after Awah filed her motion to dismiss, that "not every communication related somehow to one of the broad categories set out in section 27.001(7) always regards a matter of public concern." 591 S.W.3d at 137. The term "a good, product, or service in the marketplace" must be interpreted considering the common meaning of a "matter of public concern," which does not include "purely private matters." *Id.* at 135. Therefore, a communication regarding "a good, product, or service in the marketplace" does not constitute a "matter of public concern" unless the communication has "some relevance to a public audience of potential buyers or sellers." *Id.*[7]

---

[7] *See also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 136 (Tex. 2019) (record did not indicate "that the dispute had any relevance to the

12

Relying in part on *Creative Oil & Gas*, this Court held in *Gaskamp*, which also was decided after Awah moved to dismiss, that communications between former employees related to the employees' alleged misappropriation, sharing, and use of the plaintiff's confidential information did not constitute an exercise of their free-speech rights because these communications "had no potential impact on the wider community or a public audience of potential buyers or sellers. In short, the communications had no public relevance beyond the pecuniary interests of the private parties." 596 S.W.3d at 477.

This Court therefore concluded in *Gaskamp* that communications made by the plaintiff's former employees in soliciting and procuring business from a third party did not constitute an exercise of the employees' free-speech rights because those communications did not have any "relevance to a public audience of buyers or sellers but instead were limited to 'the pecuniary interests of the private parties involved.'" *Id.* at 479 (quoting *Creative Oil & Gas*, 591 S.W.3d at 136).

The same is true here. Awah's alleged communications with AndroGenX, and her alleged solicitation of SynergenX's patients, are related to her alleged misappropriation, sharing, and communication of SynergenX's confidential information in an attempt to develop and promote a competing business venture,

broader marketplace or otherwise could reasonably be characterized as involving public concerns").

13

allegedly in violation of the Agreement. Just like the communications that were alleged in *Gaskamp*, these communications "do not have relevance to a public audience of buyers or sellers but instead were limited to 'the pecuniary interests of the private parties involved." *Id.*[8] As such, these communications do not involve "a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(7)(E) (regarding "a good, product, or service in the marketplace").

Accordingly, we conclude that Awah did not meet her burden of showing by a preponderance of the evidence that SynergenX's claims are based on, related to, or are in response to an exercise of the right of free speech.

## D.    Exercise of Right of Association

Along similar lines, Awah contends the same allegations detailed above also implicate the exercise of the right of association. When this suit was filed, the TCPA defined the "exercise of the right of association" as "a communication between

---

[8]    *See also Griffith Techs., Inc. v. Packers Plus Energy Servs., (USA), Inc.*, No. 01-18-00674-CV, 2020 WL 4354713, at *6 (Tex. App.—Houston [1st Dist.] July 30, 2020, no pet.) (mem. op.) (concluding that plaintiffs' communications regarding development and promotion of competing business enterprise did not have any public relevance "beyond the pecuniary interest of the private parties" and, thus, defendants' counterclaims were not related to plaintiffs' exercise of right of free speech); *Newpark Mats & Integrated Servs., LLC v. Cahoon Enters., LLC*, 605 S.W.3d 671, 681–82 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (concluding that dispute at issue was private business dispute between two companies that was not relevant to broader marketplace and, therefore, communications concerning dispute did not implicate matter of public concern and TCPA did not apply).

individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2).

However, in *Gaskamp*, this Court concluded that "with respect to the pre-amendment version of the TCPA, the proper definition of 'common' in the phrase 'common interests' [as used in "exercise of the right of association"] is 'of or relating to a community at large: public.'" 596 S.W.3d at 476. In *Gaskamp*, the plaintiff alleged that former employees had jointly formed a new business venture, misappropriated trade secrets, and conspired to commit related torts to enrich themselves. *See id.*

Because the *Gaskamp* allegations "involved misappropriating . . . trade secrets and conspiring to commit related torts, benefit[ing] only the five alleged tortfeasors," and the nonmovant's pleading did not allege any "public or community interests," the Court held that the movants did not meet their burden of showing, by a preponderance of the evidence, that the nonmovant's suit was based on, related to, or was in response to the movants' exercise of the right of association. *Id.*

The same is true here. SynergenX's claims are all based on Awah's alleged misappropriation of SynergenX's confidential information, and the sharing and communication of that confidential information with AndroGenX in an attempt to develop and promote a competing business enterprise. No "public or community

15

interest" is alleged; rather, the allegations implicate *private interests* that benefit only the *private parties* involved in the intended business venture. *See id.*[9]

Accordingly, we conclude that Awah also did not meet her burden of showing by a preponderance of the evidence that SynergenX's claims are based on, related to, or are in response to an exercise of the right of association.

Based on this conclusion—and our conclusion that Awah did not meet her burden of showing by a preponderance of the evidence that SynergenX's claims are based on, related to, or are in response to an exercise of the right of free speech— we hold that the TCPA does not apply and the trial court did not err in denying Awah's motion to dismiss. We need not address Awah's additional arguments. TEX. R. APP. P. 47.1.

---

[9]     *See also Griffith Techs., Inc.*, 2020 WL 4354713, at \*5 (holding counterclaims were not related to exercise of right of association because claims were based on parties' joint conduct in developing and promoting a competing business enterprise); *Newpark Mats & Integrated Srvs., LLC*, 605 S.W.3d at 680 ("Newpark's association (internally and externally) to express, promote, and pursue a common interest, namely, to form a competing business, is not a public or community interest; it is a private interest that benefits only the private parties involved in the intended business venture.").

## Conclusion

We affirm the trial court's order denying Awah's motions to dismiss under the TCPA.

Amparo Guerra
Justice

Panel consists of Justices Countiss, Rivas-Molloy, and Guerra.