# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00953-CV

**Paul Trowe, Appellant**

**v.**

**Joseph Johnson & Skydive Lone Star, Appellees**

### FROM THE 421ST DISTRICT COURT OF CALDWELL COUNTY
### NO. 19-0-261, THE HONORABLE CHRIS SCHNEIDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Paul Trowe appeals from the trial court's order denying his motion to dismiss under the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011.[1] In five issues, Trowe argues that the TCPA applies to the suit against him brought by appellees Joseph Johnson and Skydive Lone Star (Skydive) and that they did not establish a prima facie case of their claims. We affirm the trial court's order.

## BACKGROUND

Johnson is the owner of Skydive, and Trowe was a "fun jumper" there until Johnson "banned" him from the business in July 2018. Beginning in December 2018, Trowe

---

[1] Because the underlying lawsuit was filed in June 2019, references to the TCPA in this opinion are to its provisions as they existed prior to the 2019 amendments. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684, 687 (stating that amendments to TCPA apply "only to action filed on or after" September 1, 2019).

made social media posts regarding appellees that form the basis of their underlying suit against him.

In response to the online posts, appellees initially demanded that Trowe retract them. When he refused to do so, they filed the underlying suit. In their petition, appellees allege:

> These postings, in short, implore potential customers of Skydive Lonestar to not do business with Skydive Lonestar based on the allegations that: (1) Joe Johnson is continually operating under the influence of illegal narcotics; (2) Joe Johnson and Skydive Lonestar do not follow the standards of the sport, and therefore, Skydive Lonestar had certain licensing revoked; and (3) Joe Johnson and Skydive Lonestar fail to run a safe business and put people's lives at risk.

Based on the online posts, appellees asserted claims of defamation, defamation per se, business disparagement, and tortious interference with prospective business relations. Appellees referenced and attached to their original petition copies of the posts and their attorney's letter to Trowe demanding that he retract his December 5, 2018, post, "as well as any subsequent postings of the same." Appellees continued to reference the online posts in an amended petition but did not attach the copies of the posts or their attorney's letter to the amended petition.

After appellees filed their amended petition, Trowe filed a TCPA motion to dismiss. Trowe stated that the "communications forming the basis of [appellees'] claims were made on [his] Facebook page and on a yelp review and were meant for and seen by various individuals in the skydiving world" and argued that appellees' suit should be dismissed because it was based on Trowe's exercise of the rights of free speech and association. He also argued that appellees could not establish a prima facie case to support any of their claims and that his statements in the online posts were true or expressions of opinion. Trowe filed declarations with attachments to support his motion. In his declaration, he provided additional facts about his statements in the online posts. He estimated that he had made 50 jumps at Skydive and declared

2

that he "personally witnessed Johnson using cocaine and then taking customers on tandem jumps," which was "not a safe practice"; that "[i]n [his] opinion, the Skydive planes are poorly maintained"; and that he "[does] not think that Skydive is a safe place to jump" or that it "[pays] its employees well."  He explained that he expressed his opinion because he "wanted others contemplating jumping there to be aware of [his] opinion."

Appellees filed a response to Trowe's motion to dismiss and supporting affidavits. In their response, appellees summarized and quoted from Trowe's online posts, including quoting his statements that Skydive was a "death trap" and that Johnson was "usually high on coke or meth," and detailed the facts underlying appellees' claims.  In his affidavit, Johnson averred that he was the "sole owner" of Skydive and had "banned" Trowe from Skydive in July 2018; referenced and quoted from Trowe's posts that began in mid-December 2018, including his statement that Skydive was a "death trap"; and averred that the posts were false. He also averred about the factual bases for appellees' claims, including the following facts in support of appellees' position that Trowe's complained-of statements were false:

> (1) Skydive Lonestar pays its pilots above what is industry standard and any claim by Mr. Trowe is false.  Furthermore, Mr. Trowe never had access to my business records; (2) Skydive Lonestar maintains its planes at a higher standard than most in the industry and any claim by Mr. Trowe is false.  Furthermore, Mr. Trowe never had access to my planes so he could inspect or cause them to be inspected; (3) Skydive Lonestar did not have its rating pulled by USPA [United States Parachute Association], but rather, Joe Johnson made the decision to terminate his affiliation with USPA (Joe Johnson was paying USPA an annual fee for little to nothing in return).  While Mr. Trowe attempts to put his own spin on the basis for this revocation, the minutes Mr. Trowe attached to his motion to dismiss state no specific basis for the revocation of Joe Johnson's credentials; and (4) Skydive Lonestar's instructors are all still USPA affiliated and rated.

In other affidavits, individuals who were active in the Central Texas skydiving community similarly averred about the factual bases for their beliefs that Trowe's online posts were "complete lies."

As to appellees' damages, Johnson averred that "there has been a general drop in business for Skydive Lonestar in 2019" and that, "[f]ollowing Mr. Trowe's posts, Skydive Lonestar lost roughly 20 'fun jumpers' who were providing Skydive Lonestar roughly $2,000.00 of income annually (a loss of at least $40,000 annually)." He averred that Trowe "made the posts in social media forums that are frequented by 'fun jumpers' and directly told people to go to 'Spaceland' instead of [his] business." Some of the other individuals who provided affidavits similarly averred that, following Trowe's posts, they had "noticed a drop in business at Skydive Lonestar" and that based on conversations with others in the community, they believed that the posts had been "harmful" to Johnson and Skydive.

Following a hearing on Trowe's motion to dismiss, the parties filed additional briefing. The trial court thereafter signed an order denying Trowe's motion without explanation. This interlocutory appeal followed.

**ANALYSIS**

In five issues, Trowe argues that the TCPA applies to appellees' suit because it is based on his exercise of the right of free speech[2] and that appellees did not establish a prima facie case of each element for any of their four causes of action, which are defamation,

---

[2] Trowe also contends that the TCPA applies to appellees' suit based on Trowe's exercise of the right of association. *See* Tex. Civ. Prac. & Rem. Code § 27.001(2) (defining "exercise of the right of association"). Because we conclude that appellees' claims are subject to the TCPA based on Trowe's exercise of the right of free speech, we do not address this alternative ground. *See* Tex. R. App. P. 47.1.

4

defamation per se, business disparagement, and tortious interference with prospective business relations.[3]

**Standard of Review and Applicable Law**

Relevant to this appeal, the TCPA authorizes a party to file a motion to dismiss a "legal action" that "is based on, relates to, or is in response to a party's exercise of the right of free speech." *See* Tex. Civ. Prac. & Rem. Code § 27.003(a). "'Exercise of the right of free speech' means a communication made in connection with a matter of public concern," and a "matter of public concern" includes "an issue related to" "health or safety," "community well-being," and "service in the marketplace." *Id.* § 27.001(3), (7)(A), (B), (E). "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). The term "legal action" under the TCPA includes a "lawsuit" and a "cause of action." *Id.* § 27.001(6).

Under the TCPA's burden-shifting framework, the movant bears the initial burden to show by a preponderance of the evidence that the "legal action" is subject to the TCPA. *See id.* § 27.005(b); *Hersh v. Tatum*, 526 S.W.3d 462, 466–68 (Tex. 2017) (describing and applying statutory procedure under TCPA); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898–99 (Tex. 2017) (same). Courts generally determine the TCPA's applicability "based on a holistic review of the pleadings." *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex.

---

[3] In his briefing, Trowe refers to appellees' defamation claims as claims for libel and libel per se. A "libel claim is a defamation expressed in written or other graphic form." Tex. Civ. Prac. & Rem. Code § 73.001; *see Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018). Consistent with appellees' pleadings before the trial court, we refer to the claims as defamation claims.

2018). "When it is clear from the plaintiff's pleadings that the action is covered by the [TCPA], the defendant need show no more." *Hersh*, 526 S.W.3d at 467.

If a movant meets the initial burden to show that the TCPA applies, the burden shifts to the nonmovant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code § 27.005(c). A prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam) (orig. proceeding)). A court may not dismiss a legal action if the nonmovant establishes "a prima facie case for each essential element of the claim in question" unless the movant establishes "by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Tex. Civ. Prac. & Rem. Code § 27.005(c), (d).

In determining whether the nonmovant has met its burden to establish a prima facie case, the court views the evidence in the light most favorable to the nonmovant. *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 801 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020). The courts consider as evidence "the pleadings and supporting or opposing affidavits stating the facts on which the liability or defense is based." *See* Tex. Civ. Prac. & Rem. Code § 27.006(a). Further, because the TCPA does not define "clear and specific evidence," we apply the ordinary meanings of "clear" and "specific." *See In re Lipsky*, 460 S.W.3d at 590 (observing that TCPA does not define "clear and specific evidence" and applying ordinary meanings of words "clear" and "specific").

6

We review a trial court's ruling on a TCPA motion to dismiss de novo. *See Adams*, 547 S.W.3d at 897 (deciding whether TCPA applied under de novo standard of review); *Neurodiagnostic Consultants, LLC v. Nallia*, No. 03-18-00609-CV, 2019 Tex. App. LEXIS 8156, at *7 (Tex. App.—Austin Sept. 6, 2019, no pet.) (mem. op.) (stating that standard of review is de novo in appeal from trial court ruling on TCPA motion to dismiss); *Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.) ("We review de novo whether each party carried its assigned burden [under the TCPA].").

**Applicability of TCPA**

In his first issue, Trowe argues that the TCPA applies to appellees' suit because it is based on his exercise of the right of free speech. Specifically, he argues that their suit is a "legal action" that seeks to recover damages for "alleged statements by Trowe" that related to health, safety, community well-being, and a "service in the marketplace." *See* Tex. Civ. Prac. & Rem. Code. § 27.001(3) (defining "exercise of the right of free speech" to mean "communication made in connection with a matter of public concern"), (6) (defining "legal action"), (7)(A), (B), (E) (including statements regarding health, safety, community well-being, and "service in the marketplace" within term "matter of public concern"); *see Adams*, 547 S.W.3d at 892 ("A 'legal action' can consist of an entire lawsuit or a single cause of action.").

Appellees' pleaded claims are based on Trowe's online posts regarding appellees' allegedly unsafe business practices, including the condition of Skydive's planes, regulatory compliance, and Johnson's illegal drug use "on tandem jumps." *See Adams*, 547 S.W.3d at 897 (determining applicability of TCPA "based on a holistic review of the pleadings"). As such, Trowe's complained-of posts that form the basis of appellees' claims fall squarely within the

TCPA definition of "communication made in connection with a matter of public concern" because they concern a "service in the marketplace" and "health or safety." *See Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 133–36 (Tex. 2019) (discussing definition of "matter of public concern" and phrase "good, product, or service in the marketplace" in TCPA and prior cases that addressed "communications" involving health or safety concerns).

Appellees argue that Trowe did not meet his burden to establish that the TCPA applies because "free speech does not insulate lies" and the "factual circumstances surrounding this case show that [Trowe] was in no way addressing '*a matter of public concern*.'" The statutory definition of "exercise of the right of free speech," however, "is not fully coextensive with the constitutional free-speech right protected by the First Amendment to the U.S. Constitution." *Adams*, 547 S.W.3d at 892. And appellees' pleadings make clear that the online posts raising safety concerns about appellees' business operations have "some relevance to a wider audience" of potential customers in the marketplace. *See Creative Oil & Gas*, 591 S.W.3d at 134 (noting that "'in the marketplace' modifier suggests that the communication about goods or services must have some relevance to a wider audience of potential buyers or sellers in the marketplace, as opposed to communications of relevance only to the parties to a particular transaction").

Because appellees' pleadings make clear that their suit is covered by the TCPA, we conclude that Trowe satisfied his burden. *See Hersh*, 526 S.W.3d at 467 (explaining that when plaintiff's pleadings make clear that suit is covered by TCPA, "defendant need show no more"). Thus, we sustain Trowe's first issue.

8

**Defamation and Defamation Per Se**

In his second and third issues, Trowe argues that appellees failed to establish a prima facie case for their claims of defamation and defamation per se. In their pleadings, appellees alleged that the complained-of statements in Trowe's posts were "without question defamatory, and defamatory per se."

The elements of a prima facie case for defamation are: (1) the defendant published a false statement; (2) that was defamatory concerning the plaintiff; (3) with the requisite degree of fault regarding the statement's truth; and (4) damages, unless the statement constitutes defamation per se. *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017); *In re Lipsky*, 460 S.W.3d at 593 (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). "Defamation per se refers to statements that are so obviously harmful that general damages may be presumed." *In re Lipsky*, 460 S.W.3d at 593; *see Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018) (discussing difference between defamation per se and per quod); *Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013) (discussing rationale behind presuming harm in defamation per se cases). Whether a statement qualifies as defamatory per se is generally a question of law. *In re Lipsky*, 460 S.W.3d at 596; *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 581 (Tex. App.—Austin 2007, pet. denied).

Trowe argues that appellees "were required to present—for each alleged publication—clear and specific evidence of when, where, and what was said, the defamatory nature of the statements, and how they damaged [appellees]" and that appellees only alleged "in a very conclusory fashion that Trowe published defamatory statements" without providing "what those allegedly defamatory statements were." *See In re Lipsky*, 460 S.W.3d at 591 (stating that

9

"[i]n a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss"). Trowe argues that there was no evidence of what the statements in the online posts actually were because appellees failed to attach copies of the posts to their amended petition or to Johnson's affidavit.

In appellees' amended petition and Johnson's affidavit, however, they referenced and stated the substance of the complained-of statements in the online posts, identified that the posts were made in mid-December 2018 through May 2019 and remained online, quoted specific statements in the posts, and filed a copy of one of the posts in response to the motion to dismiss.[4] Further, Trowe admitted in his motion to dismiss that he made the posts on his "Facebook page and on a Yelp review." His challenge to appellees' defamation claims before the trial court was that appellees "have not and cannot show any proof that Trowe's statements on social media are false or have caused them any harm or have resulted in any damages." Considering the pleadings and other evidence, we cannot conclude that appellees failed to establish a prima facie case because they did not attach copies of the online posts to their amended petition or Johnson's

---

[4] In this online post, Trowe did not recommend Skydive and stated:

[Skydive] is a death trap waiting to happen. It's not a USPA [United States Parachute Association] drop zone anymore (they pulled their rating in September 2018 because of a failure to follow the rules of the sport), the DZO doesn't have a Tandem rating because he got busted smuggling drugs (Google Joseph Johnson Colorado), and to make matters worse he's usually high on coke or meth (I've witnessed it personally). The DZ crashed a Cessna 182 in April 2018 because the owner pays shit wages for pilots (and hires people with little to no experience), and the landing gear fell off on the King Air right after take off in August because he's too cheap to keep up with the maintenance. Until they switch owners, you're better paying a little more and going to Spaceland, literally right down the road. Until something changes, this is my recommendation. I've been in the sport since 2005 and jump all over the place. My skydiving license number is C-36031.

affidavit. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a) (requiring courts to consider pleadings among evidence supporting or opposing motion to dismiss); *In re Lipsky*, 460 S.W.3d at 591 (explaining that "plaintiff must provide enough detail to show the factual basis for its claim" and that TCPA "does not impose an elevated evidentiary standard or categorically reject circumstantial evidence").

Trowe also argues that some of his statements in the posts were not actionable because they were opinions and specifically references his "opinion" that appellees "do not pay employees well," that "Skydive was not a safe place to jump," and that its "airplanes were not properly maintained." "If a statement is not verifiable as false, it is not defamatory." *Dallas Morning News*, 554 S.W.3d at 624 (citing *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013)). "Similarly, even when a statement *is* verifiable as false, it does not give rise to liability if the 'entire context in which it was made' discloses that it is merely an opinion masquerading as a fact." *Id.* (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002)). Here, viewing Trowe's complained-of statements in the context in which they were made, we cannot conclude that any of them were "merely an opinion masquerading as a fact." *See id.* (explaining that threshold question of whether words used are capable of defamatory meaning is objective, not subjective (citing *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 157 (Tex. 2004)). For example, whether Skydive properly maintains its planes, follows the "rules of the sport," and "hires people with little to no experience" are all verifiable facts.

Trowe also argues that appellees failed to produce any evidence of damages or to establish a prima facie case for defamation per se. He argues that "no actual crime is attributable to Johnson—being high is not a crime, while possession or sale of drugs is"; that there "is no statute that makes criminal the act of skydiving while under the influence of narcotics"; and that

11

"certainly no crime has been attributed to the entity of Skydive Lone Star." Trowe's statements about appellees' operations and Johnson's illegal drug use, however, were directed to appellees' fitness to provide skydiving to the public—the nature of their business—and were "obviously detrimental to [appellees'] good name." *See Dallas Morning News*, 554 S.W.3d at 624, 638 (explaining that "[r]emarks that adversely reflect on a person's fitness to conduct his or her business or trade are also deemed defamatory per se" (quoting *In re Lipsky*, 460 S.W.3d at 596)); *In re Lipsky*, 460 S.W.3d at 596 (observing that "[a]ccusing someone of a crime" is example of defamation per se); *Hancock*, 400 S.W.3d at 64 ("A statement that injures a person in her office, profession, or occupation is typically classified as defamatory per se."); *Texas Disposal Sys. Landfill*, 219 S.W.3d at 581 (listing examples of statements that are typically classified as defamation per se); *see also* Tex. Health & Safety Code §§ 481.102 (classifying cocaine and methamphetamines within Penalty Group I), .115 (making it felony to possess Penalty Group I substances).

Further, even if we were to assume that Trowe's complained-of statements about appellees' business operations and Johnson's illegal drug use were not defamatory per se, appellees presented clear and specific evidence of damages caused by the posts, including economic harm. *See In re Lipsky*, 460 S.W.3d at 591 (explaining that although TCPA "initially demands more information about the underlying claim," it "does not impose an elevated evidentiary standard or categorically reject circumstantial evidence"). In his affidavit, Johnson averred that following Trowe's posts, Skydive "had lost roughly 20 'fun jumpers' who were each providing Skydive Lonestar roughly $2,000.00 of income annually (a loss of at least $40,000 annually)" and that he also had been "directly told by different individuals that Mr. Trowe's postings caused them to not jump at Skydive Lonestar." Other individuals who were active in

12

the Central Texas skydiving community averred that Trowe's "lies" "on social media have been talked about by those in the local skydiving community" and that following these postings, the individuals had "noticed a drop in business at Skydive Lonestar" and believed that Trowe's posts had been harmful to appellees.

Trowe also argues that all of Skydive's claims, including its defamation claims, must be dismissed because there was no evidence that it was a separate entity from Johnson. Assuming without deciding that Skydive was required to present evidence that it was a separate entity to meet its burden to establish a prima facie case under the TCPA, appellees alleged in their amended petition that Skydive is a "business located in Luling" and that Johnson is an individual, Trowe's own evidence refers to Johnson as the "owner" of Skydive, and Johnson avers in his affidavit that he is the "sole owner" of Skydive and refers to it as his business. In our TCPA review, we must view the pleadings and other evidence in the light most favorable to appellees. *Jones*, 538 S.W.3d at 801; *see* Tex. Civ. Prac. & Rem. Code § 27.006(a) (stating that courts consider evidence in form of pleadings and affidavits). Viewing the evidence under this standard, we conclude that appellees met their burden to establish a prima facie case of their defamation claims. *See In re Lipsky*, 460 S.W.3d at 590. We overrule Trowe's second and third issues.

**Business Disparagement**

In his fourth issue, Trowe argues that appellees failed to establish a prima facie case of the elements of a business disparagement claim. "To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in

13

special damages to the plaintiff." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003); *see In re Lipsky*, 460 S.W.3d at 592 & n.11 (stating elements of business disparagement claim and noting that "special damages are synonymous with economic damages" and distinguishable from "non-economic losses, such as loss of reputation and mental anguish"). While defamation chiefly protects the personal reputation of the injured party, business disparagement protects the economic interests of the injured party against pecuniary loss. *Waste Mgmt. of Tex., Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014); *In re Lipsky*, 460 S.W.3d at 591; *Forbes*, 124 S.W.3d at 170; *see Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987) (comparing defamation and business disparagement claims).

Trowe argues that Johnson cannot establish a claim for business disparagement because Skydive "is allegedly a separate entity and the 'business' was wholly owned by [it]." Assuming without deciding that Johnson was required to present evidence that he owned the business, appellees alleged in their amended petition and Johnson averred in his affidavit that he is the owner of Skydive. Trowe also relies on appellees' failure to attach copies of the complained-of posts to their amended petition and Johnson's affidavit to argue that, "[s]ince Skydive has not seen fit to place the actual statements in evidence," it cannot establish several of the elements of its business disparagement claim. But, as we observed above, the substance of the online posts, including quotations of the complained-of statements were contained in the pleadings and evidence, a copy of one of the posts was attached to appellees' response to Trowe's motion to dismiss, and Trowe admitted that he made the posts in his own filings with the trial court.

14

In his affidavit, Johnson provided the factual basis as to the elements of appellees' claims, including their business disparagement claims. For example, he averred about the factual basis underlying appellees' allegation that Trowe acted with malice when he made the posts:

> [B]etween April and July 2018 (when I banned Paul Trowe), he jumped at Skydive Lonestar on 12 separate occasions. If Mr. Trowe truly believed Skydive Lonestar to be a 'deathtrap' as he claims, I submit he would not have jumped at Skydive Lonestar with such frequency (or at all) up to the time of being banned.
>
> * * *
>
> I believe Mr. Trowe has acted with actual malice in publishing statements about my company and me. Consider, as previously stated herein, Mr. Trowe only saw fit to make the social media posts after my relationship with Mr. Trowe soured and Mr. Trowe was banned from Skydive Lonestar. Apparently, Mr. Trowe was content to ignore what he felt was a "death trap" until he was banned from my business. That being said, I also believe Mr. Trowe has acted with negligence in publishing statements about my company and me. Consider, Mr. Trowe has claimed (1) the planes Skydive Lonestar uses are not safe without ever having inspected them and with no substantiating proof; (2) Skydive Lonestar's USPA affiliation and ratings were revoked when this is not true; (3) my USPA affiliation and ratings were revoked for not being safe when the USPA minutes clearly do not reflect this (apparently Mr. Trowe just reached this conclusion). The foregoing being true, Mr. Trowe had to know the posts were false, or at the very least, he did not have sufficient information to actually make the posts. That being true, Mr. Trowe acted with reckless disregard for whether the statement is true. The fact that Mr. Trowe only made such statements after he was banned from Skydive Lonestar shows he acted with ill will. Mr. Trowe's intent to interfere with my economic interests can effectively be inferred.

See *Hurlbut*, 749 S.W.2d at 766 (explaining that business disparagement defendant may be held liable "only if he knew of the falsity or acted with reckless disregard concerning it, or if he acted with ill will or intended to interfere in the economic interest of the plaintiff in an unprivileged fashion" (citing Restatement (Second) of Torts § 623A, comment g (1977))).

Viewing the pleadings and other evidence in the light most favorable to appellees, *see Jones*, 538 S.W.3d at 801, we conclude that they met their burden to establish a prima facie

15

case as to their business disparagement claims, *see In re Lipsky*, 460 S.W.3d at 590. We overrule Trowe's fourth issue.

**Tortious Interference with Prospective Business Relations**

In his fifth issue, Trowe argues that appellees failed to establish a prima facie case of the elements of their claims for tortious interference with prospective business relations. To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *see Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) (addressing requirement of predicate tort or unlawful conduct); *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 474 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("The classic proximate-cause tests for cause-in-fact and foreseeability apply to claims for tortious interference.").

Trowe argues that the only independent tort alleged is defamation and that appellees failed to establish a prima facie case for their defamation claims. He also argues that they failed to show: (i) "any actual damages that resulted from the alleged interference," (ii) "any intent on the part of the defendant to bring about any interference," (iii) "a reasonable probability that Skydive Lonestar would have entered into business with a third party but for

16

Trowe's statements," or (iv) "any concrete examples of third parties whose prospective business was lost other than Johnson's vague and self-serving observations, which is considered no evidence." As we explained above, however, we must view the pleadings and evidence in the light most favorable to appellees. *See Jones*, 538 S.W.3d at 801. Under this standard of review, we have concluded that appellees established a prima facie case of defamation.

Turning to the pleadings and evidence regarding the other elements of appellees' intentional interference claims, among the statements that Trowe posted, he urged potential customers to take their business to "Spaceland, literally right down the road" after making statements regarding appellees' unsafe operations, including that Skydive was a "death trap" and that Johnson was "usually high on coke and meth." In his motion to dismiss, Trowe admitted that the "communications forming the basis of [appellees]' claims were made on Trowe's Facebook page and on a yelp review and were meant for and seen by various individuals in the skydiving world." In his affidavit, Johnson averred that Trowe "made the posts in social media forums that are frequented by 'fun jumpers' and directly told people to go to 'Spaceland' instead of my business" and that, following Trowe's posts, "Skydive lost roughly "20 'fun jumpers' who were providing Skydive Lonestar roughly $2,000.00 of income annually (a loss of at least $40,000 annually)."

Viewing the pleadings and evidence in the light most favorable to appellees, we conclude that they support a rational inference that Trowe intended for his online posts to interfere with appellees' prospective business relations, *see In re Lipsky*, 460 S.W.3d at 591 (explaining that TCPA "does not impose an elevated evidentiary standard or categorically reject circumstantial evidence"); that there was a reasonable probability that the posts interfered with those relations, *see Richardson-Eagle, Inc.*, 213 S.W.3d at 474 (explaining that "causation

17

requires that the plaintiff bring forth sufficient facts so that the evidence, and logical inferences drawn from the evidence, support a reasonable probability that the defendant's acts or omissions were a substantial factor in bringing about injury"); and that appellees suffered actual damage or loss, *see Coinmach Corp.*, 417 S.W.3d at 923. Thus, we conclude that appellees met their burden to establish a prima facie case of tortious interference with prospective business relations. We overrule Trowe's fifth issue.

## CONCLUSION

For these reasons, we affirm the trial court's order.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed:   August 17, 2021

18